People of the State of Illinois ex rel. Catherine L. D. Corbett et al., Appellees, v. James P. Allman et al., Appellants.

Gen. No. 41,789.

Heard in the third division of this court for the first district at the June term, 1941. █ Opinion filed January 7, 1942.

BARNET HODES, Corporation Counsel, for appellants; JAMES A. VELDE, CARL H. LUNDQUIST and LOUIS H. GEIMAN, Assistant Corporation Counsel, of counsel.

MICHAEL F. RYAN, of Chicago, for appellees; RICHARD F. McPARTLIN, JR., of Chicago, of counsel.

MR. PRESIDING JUSTICE BURKE delivered the opinion of the court.

On April 5, 1940, the relators filed their amended petition in the circuit court of Cook county for a writ of mandamus to compel the police commissioner and the members of the Civil Service Commission of the City of Chicago, to do whatever was necessary to have the relators certified and appointed to certain positions in the department of police. The case was tried by the court without a jury, resulting in a judgment awarding the writ, to reverse which this appeal is prosecuted.

The defendant, James P. Allman, is commissioner of police, and the defendants, Joseph P. Geary, Wendell E. Green and John E. Brennan, are members of the Civil Service Commission. The Civil Service Commission Acts pursuant to the Cities Civil Service Act (sec. 39-77, ch. 24½, Ill. Rev. Stat. 1941 [Jones Ill. Stats. Ann. 23.040-23.079]). The commission adopted rules to carry out the purpose of the act. Section 3 of the act provides that the commissioners "shall classify all the offices and places of employment in such city with reference to the examinations hereinafter provided for." Section 6 provides that such examinations "shall be practical in their character and shall relate to those matters which will fairly test the relative

capacity of the persons examined to discharge the duties of the positions to which they seek to be appointed, and shall include tests of physical qualifications and health, and when appropriate, manual skill.'' Section 10 provides that ''the head of the department or office in which a position classified under this act is to be filled, shall notify said commission of that fact, and said commission shall certify to the appointing officer the name and address of the candidate standing highest upon the register for the class or grade to which said position belongs.'' By the rules of the commission, the classified service is divided into five main branches. Branch 1 is defined as ''embracing positions the duties of which are principally administrative.'' Within each branch the service is divided into classes, each including offices and places of employment of the same relative kind and character of work. Class A in branch 1 is defined as follows: ''Clerical, Accounting and General Office Service, embracing positions the duties of which involve auditing, accounting, recording, stenography, machine operating or any kind of general office work and supervision thereof.'' The service is also divided into grades uniform to all branches and classes (except Branch V, Class U). Grade 1 is designated as ''Minor Grade. Positions in the lower ranks,'' and Grade 2 as ''Junior Grade. Positions of routine duties.'' Among the positions classified are several classes of telephone operators having such titles as ''Telephone Operator (Gas and Electricity),'' ''Telephone Operator (Board of Health) (Contagious Disease Hospital),'' ''Telephone Operator and Clerk.'' There is also a position having the title ''Telephone Operator'' and bearing the classification ''Branch 1, Class A, Grade 2.'' The monthly salary range of the latter position is $125 to $171.66. The duties of the position are stated by the Civil Service Commission to be:

"Under supervision, to operate a telephone switch-board in a municipal department; to keep records of the calls and telephone connections; to give information to persons making inquiries; to perform clerical work incidental or in addition thereto; and to perform related work as required. Examples: Answering incoming calls and making switchboard connections; making connections for outgoing calls; keeping records of long distance call; giving information to the public; transmitting messages and assignments to employes, as directed; assisting on routine clerical work such as card indexing, filing, typing and keeping simple records." Another classified position is that of police clerk (female) bearing the classification, "Branch 1, Class A, Grade 1." The monthly salary of this position is $115 for a superior and $100 for others. The duties of the position are stated by the commission to be:

"Female Police Clerks are assigned to the Central Complaint Room of this department, receiving telephone calls over 'Police 1313' lines, taking complaints and reports therefrom, and transmitting same through proper channels."

Examination No. 5005 was held on April 4, 1936, for the position of "Telephone Operator, Branch 1, Class A, Grade 2." The result was posted on December 30, 1937, and an eligible list was posted on the following day. This list contained 73 names in numerical order with the grades received in the examination appearing opposite the names. The examination was taken by relators and their numbers on the eligible list are as follows: "51 Catherine L. D. Corbett, 52 Helen O. Hynes, 53 Delia C. Herriman, 56 Florence E. Bush, 58 Ellen J. Blake, 59 Alva G. Johnson and 60 Laura E. Boyle." The first 23 persons named in the eligible list were certified to the public service department and appointments were made by that department and re-

ported to the Civil Service Commission. On January 28, 1938, the commissioner of police requested the commission to fill 23 vacancies in the position of female police clerk from the telephone operators' eligible list. In response to this request the commission certified the names of 23 persons from the list of telephone operators and the commissioner of police reported their appointment as police clerks. The eligible list, with 49 certifications made from it, was in effect at the time of the trial. The Civil Service Commission has not called an examination for the position of female police clerk, Branch 1, Class A, Grade 1. During the first half of the month of January 1941, and during every month of the year 1940, there were 12 persons occupying positions of female police clerk by temporary 60-day appointments, which were being continuously renewed at their expiration. During the years 1939, 1940 and 1941 the appropriation ordinances provided for 32 police clerks $1,200 a year each. On November 21, 1939, relators presented to defendants a document called "Notice and Demand." This document demanded that the commission fill the 12 vacancies "in the positions of telephone operators assigned as police clerks in Branch 1, Class A, Grade 1," and stated that the plaintiffs were willing to "accept certification to said positions in a grade lower than that for which they were examined." Defendants ignored the demand, whereupon relators filed their petition for mandamus. At the trial 10 witnesses testified for relators. None of these witnesses was a relator. Defendants did not introduce any testimony. The testimony established that the actual duties performed by persons working under the title of telephone operator were the same as the actual duties performed under the title of police clerk (female). Defendants admit that the evidence shows that a person who can perform the duties of a telephone operator in Branch 1, Class A, Grade 2, can also perform the duties of a

female police clerk in Branch 1, Class A, Grade 1. Defendants maintain that it does not follow that a female police clerk is able to perform the duties of a telephone operator and that there is no evidence that a female police clerk is able to perform the duties of a telephone operator, and state that it is inaccurate to say that the duties of the two positions are the same. They also call attention to the fact that the appropriation ordinances depart from the title "Police Clerk (female)" as established by the commission, by providing for the payment of 32 persons under the title "Police Clerk." It cannot be doubted that the intent of the appropriation ordinances is to provide for the payment of those performing the duties of female police clerk. The discrepancy shows that the nomenclature of the appropriation ordinances does not always conform to that of the commission in designating the titles of the positions.

Defendants contend that the language of the applicable statutes and rules does not impose a duty on the commissioners to certify the relators as female police clerks and does not give the plaintiffs a right to be so certified. We agree with the statement of defendants that the writ of mandamus confers no new authority upon the person or body against whom it is issued; that it creates no duty, but will issue only where the duty or authority to act exists without the writ. (*People v. Board of Review of Lake County,* 363 Ill. 106, 112, 3.) Defendants call attention to the fact that the writ of mandamus commands them to do all acts necessary to the end that the names of the eligibles appearing on the eligible register created by examination No. 5005 may be certified and appointed to fill 12 positions classified by the commission under the title of police clerk (female), and that the writ directs the commissioners to certify persons classified as telephone operators (Grade 2) to positions classified as female police clerks (Grade 1). De-

fendants say they are directed to certify persons classified in the higher grade of telephone operator to positions of a lower classification. They contend that the commission has no duty to certify a person in one grade to a position in a lower grade. Defendants urge that the provision of section 10 of the Civil Service Act [Jones Ill. Stats. Ann. 23.012] requiring the commission to ''certify to the appointing officer the name and address of the candidate standing highest upon the register for the class or grade to which said position belongs'' is violated when the commission certifies a candidate from a class or grade higher than the grade to which the position belongs. Relators insist that the correct interpretation of the applicable statute imposes a mandatory duty on the defendants to certify and appoint relators for the performance of the duties of telephone operator appropriated for under the title of police clerk (female), and that the courts will recognize the rights of eligibles on a civil service list to certification and appointment to discharge the duties for which they were examined and will consider the nature of the duties to be performed as controlling. They also point out that section 6 of the Civil Service Act [Jones Ill. Stats. Ann. 23.008] provides that the examinations shall be practical and shall relate to those matters which will fairly test the relative capacity of the persons examined to discharge the duties of the positions. We agree with the statement of relators that the testimony shows that the actual specific duties performed by telephone operators and police clerks (female) are essentially the same and have only such incidental differences as exist between the same positions in different departments. The commission has on file four different cards with respect to the position of telephone operator, all of which cards contain various minor distinctions with reference to the duties described thereon, with varying salaries. All of these four cards place the various

positions in Branch 1, Class A, Grade 2. Relators argue that if there is no basis for discrimination in the grade classification for the positions described in these four cards, there is likewise no basis for grade discrimination between the positions designated as telephone operator and police clerk (female), and that section 10 is not violated by the certification of those on the telephone operators' list to the position of police clerk (female) because both are in the same branch and class. They call attention to the language of section 10 that the certification shall be of the candidate standing highest upon the register for the class or grade to which said position belongs. Defendants respond by saying that the words ''Class'' and ''Grade'' are synonymous. Relators state that ''no one can maintain that if the Police Department should have the titles of some of the patrolmen in the service of the City changed to that of 'guard,' that in making subsequent certifications for the filling of vacancies in the position of 'guard' that the Commissioner of Police and the Civil Service Commission could do so without regard to any eligible register for the position of patrolman.'' We have read the cases cited by the respective parties. In *Kipley v. Luthardt,* 178 Ill. 525 (as appears from the case of *City of Chicago v. Luthardt,* 191 Ill. 516), the record shows that Luthardt was dropped from his position as chief clerk of the detective bureau. No charges were preferred against him and the only pretense for his dismissal was the failure of the city council to appropriate for his position by the name of ''Chief Clerk of the Detective Bureau of the Department of Police,'' and in attempting to discontinue or abolish the said position by changing the name to ''Secretary of the Chief of Detectives, rank of lieutenant,'' without in any way changing the duties of the position. The court restored Luthardt to his position and held that the mere change of title, without change in the duties, was not

an abolishment of the position. In *People v. Bundesen,* 277 Ill. App. 169, the relator, a civil service supervising field nurse, was assigned to the performance of duties inferior to those of her position, although she was allowed to retain her higher title, classification and salary. Two persons were employed as temporary appointees to perform the duties that had formerly been performed by relator. The court restored plaintiff to the performance of duties for which she had qualified by civil service examination. We agree with the defendants that the facts in these cases are not analogous to the facts in the case at bar. Defendants also maintain that the imposition of a duty on the commission to certify persons on eligible lists to positions of a classification lower than that for which the eligible list was created, contravenes the classification of positions made by the commission. They suggest that the classification of civil service positions required the determination of many questions of fact and of policy, and that determinations of this kind by administrative bodies are within their discretion and are not interfered with by the courts. (*MacGregor v. Miller,* 324 Ill. 113, 118). Relators maintain that a determination by the commission that a change of title without a change in duties does not require another examination, is not subject to review. They rely on the case of *McArdle v. City of Chicago,* 172 Ill. App. 142, and *McArdle v. City of Chicago,* 216 Ill. App. 343. McArdle passed a civil service examination for the position of "cement tester." Sometime after he entered upon the performance of his duties, such duties were increased in volume but not in kind. In the appropriation for his position the title thereto was changed from that of "cement tester" to "chief tester in charge." While employed under the title of "cement tester" his salary was increased from $125 to $250 per month. The court held that the plaintiff was entitled to his civil service standing even in the

higher salaried position, without the necessity of taking a promotional examination therefor. The court pointed out that the commission approved and certified the regular payrolls, each of which showed an item of $250 per month to be paid to the petitioner under the specific title of cement tester. From a careful study of the cards on file with the commission, and the testimony of the witnesses we are of the opinion that the duties of the position of telephone operator and police clerk (female) are substantially the same. They are both telephone operators with incidental duties as clerks. The Civil Service Commission did not hold an examination for female police clerks. It did certify as female police clerks 23 girls, whose names appeared on the eligible list for telephone operator. When the certification of these 23 names was made they were not given any other or additional examination to test their capacities to perform the duties under the title of female police clerks. Under the circumstances shown, the defendants have determined that it is unnecessary to call another examination for the position of female police clerks, and have determined that the sole requisite for the performance of the duties of the position designated as police clerk (female) is to qualify by a civil service examination for the duties of the position of telephone operator. The salary of telephone operators ranges from $125 to $171.66 per month, while the salary of police clerks is fixed at $100 per month. The difference between the lowest salary paid to a telephone operator and the salary paid to a female police clerk is $25 per month, while the difference between the salary paid to those who work under the title of telephone operator is as high as $46.66 per month. It is clear that while the court should take into consideration the difference in the salary, such difference in itself does not establish that the positions or the duties of the positions are different.

Defendants assert that relators rely on a provision of section 2 of rule 4 of the rules of the commission as imposing a duty on the commission to make the certification. The provision reads: "An eligible may expect certification to a position in a grade lower than that for which he was examined, and in the same general class of service and of similar duties, but the acceptance of any such lower grade position shall fix permanently the grade of the appointee therein." We agree with defendants that this rule does not impose a duty on the commission, and that the purpose is to provide a means whereby an eligible may waive his or her right in his or her grade by accepting a position in a lower grade. Relators answer that they do not rely upon the provision of section 2 of rule 4, and insist that when the duties of the two positions are substantially the same, the commission must certify from the eligible list for the class to which the position in reality belongs. Defendants say that "if the ruling of the trial court in this case is not reversed, a new duty is imposed upon the Civil Service Commission; that whenever there is a vacancy in the position of female police clerk and there is no list of eligibles for the position, the commission must offer to certify telephone operators to the position, and that whenever a similar situation exists with respect to other positions in the classified civil service, that is, when there are vacancies in a position for which there is no eligible list but there are persons on the eligible list for a position of a higher grade who are able to perform the duties of the vacant position, the commission must offer to certify the persons in the grade higher than the vacant position. The result of the ruling is thus to establish a broad principle that will apply to the entire administration of the Civil Service Act. The effect of the trial court's ruling is to disrupt the classification of positions made by the Civil Service Commission." Relators answer that "a decision for the plaintiffs in

this case does not, as the defendants maintain, require the Civil Service Commission to certify all eligibles from a higher grade to a vacancy in a lower grade whenever the vacancy occurs. It merely requires the commission to certify a person for appointment to a position for which he has been examined, when the duties of the so-called lower position are the same as the duties of the so-called higher position, and where no examination is held or deemed necessary for the so-called lower position. There is no reason for saying that a decision for plaintiffs in this case must go beyond the particular facts and circumstances in this case where we have (a) two different titled positions, having the same duties, (b) where we have the Civil Service Commission determining by its own action that examination for one position qualifies the person for appointment to the other and (c) where we have the arbitrary action of the Civil Service Commission in certifying 23 eligibles from the telephone operators' list, and refusing to certify the remaining names on said list, though for a period of more than three years from the appointment of the 23 from the telephone operators' list, temporary appointees have been continuously performing the duties of the position for which plaintiffs have qualified by an examination." We are of the opinion that the reasoning of counsel for the relators is sound, that the action of the commission in refusing to certify the relators to 7 of the 12 remaining vacancies is an abuse of discretion, and that the court was right in granting the writ of mandamus. Therefore, the judgment of the circuit court of Cook county is affirmed.

*Judgment affirmed.*

HEBEL and KILEY, JJ., concur.