Ethel Snyder Jones, Appellant, v. Jessie Katz, Individually and Executrix and Trustee of Estate of George F. Harding, Deceased, Appellee.

Gen. No. 43,030.

 Heard in the second division of this court for the first district at the April term, 1944. Opinion filed February 13, 1945. Rehearing denied March 5, 1945. Released for publication March 5, 1945.

VICTOR M. HARDING, JR., of Milwaukee, Wisconsin, for appellant.

DONALD P. VAIL and ARTHUR J. MURPHY, both of Chicago for appellee.

MR. JUSTICE FRIEND delivered the opinion of the court.

Ethel Snyder Jones brought suit in chancery against Jessie Katz, individually and as executrix and trustee of the estate of George F. Harding, deceased, to recover the amount of a gift in trust under the will of her grandfather, Abner C. Harding. Trial by the court resulted in an order dismissing the complaint for want of equity, from which plaintiff appeals.

From the essential facts it appears that plaintiff's grandfather, Abner C. Harding, a resident of Warren county, Illinois, died in 1874, owning in excess of 200 tracts of land in this and other states, as well as considerable personal property invested in bonds, stocks, mortgages and notes, and leaving a will, made the year prior to his death, which contained, *inter alia,* the following provisions:

"3rd. I give & devise to my son George F. Harding the sum of Twenty Thousand Dollars to be by him invested in Bonds or mortgages bearing interest, in trust & for the use of my daughter Mary, wife of George Snyder & for her support, directing that my son or his Heirs or successor pay to her the interest derived therefrom during her life, and at her decease the said sum to remain a part of my Estate & be invested & become the absolute property of my said son George F. Harding & his Heirs.

"In like manner I bequeath to him my said son, the sum of Ten Thousand Dollars to be by him invested in interest bearing securities & the interest paid yearly to each of the children of my said daughter, the Interest of said sum, & upon the marriage or age of Manhood my said son is directed to pay said investment to each of them, provided in his opinion they will make good use of it, but if not then to retain it & give in the respective case the interest only. Upon the death of any one of said children then this bequest is to be determined & the investment remain the property of my said son or his Heirs."

In the fourth clause of the will he gave the rest and residue of his estate, aside from certain specific legacies, to his son George F. Harding (hereinafter called "Sr."), who was also named executor.

At the time of his death the testator had two children, George F. Harding, aged 44, and Mary Snyder, aged 41, both of whom were married and had children. Mary then had five children, ranging in age from eighteen years to one year. At the time of the testator's death, none of Mary's children was married and none had reached 21 years, the age of manhood. A sixth child, Ethel, the plaintiff herein, was born a year after Abner C. Harding's death, and before any of Mary's children had married or reached the age of manhood. Mary Snyder died in 1900.

George F. Harding, Sr., accepted the trust established by his father's will, administered the estate,

and acted as trustee for the benefit of his nephews and nieces until he died in 1915. He evidently construed the foregoing provisions of his father's will as establishing a gift in trust of $10,000 to each of Mary's children, because in his final report as executor, presented to the Warren county court in May 1893, he reported that he had paid $10,000 to Lenora, George and Schuyler, respectively, the three oldest children of Mary, but that he had not yet paid the sum of $10,000 to Bertha nor to Abner Clark, since Bertha had not yet married and Abner Clark was not yet 21 years of age, but that he had set aside the sum of $10,000 for each of them. No mention was made of Ethel, the youngest child, who was then 17 years of age. It appears from the testimony of Abner Clark that Bertha received her $10,000 share only after threatening to bring suit. Abner Clark, who attained his majority in 1894, never received his full $10,000 legacy from George F. Harding, Sr., but did receive, with considerable delay and difficulty, monthly sums by way of interest. About two or three years before the trustee died, he paid Abner Clark $5,000 in principal, and later his son, George F. Harding, Jr., who was the executor and residuary beneficiary of his father's estate, continued monthly payments of interest and finally in 1919 paid Abner Clark $5,000, representing the balance of his share in the trust.

Because the testimony of the plaintiff, Ethel, was excluded by the trial judge under section 2 of the Evidence Act (Ill. Rev. Stat. 1943, ch. 51 [Jones Ill. Stats. Ann. 107.068]), the facts with respect to payments made to her as beneficiary are somewhat uncertain. It is reasonably clear, however, that the trustee, George F. Harding, Sr., intended to treat Ethel in the same manner as her brothers and sisters, because he apparently made monthly payments to her in the same way as he did to Abner Clark. In the deposition of Abner Clark, taken in August 1941, he testified that in the summer of 1915 he had a conversation with

George F. Harding, Sr., regarding his sister Ethel, who had asked him to intercede and try to get George F. Harding, Sr., to pay her the interest or the equivalent that the other children had received under the will. Harding then stated that he intended to provide for Ethel by giving her the equivalent received by the other children but would not give her any of the principal until he thought she "would make proper use of it," using substantially the language of the will. Whether or not he made the monthly payments, as he said he intended to do, is not clear, because all records prior to 1934 were lost and defendant was unable to produce any documentary evidence on the question. Gregory T. Van Meter, who had been associated in the handling of real estate with George F. Harding, Sr., since 1886 and thereafter with George, Jr., until his death, was called as a witness on behalf of plaintiff, but his testimony was so inconclusive and contradictory as to be of no probative value. He first stated that he was not familiar with payments made by George F. Harding, Sr.; that "I don't think he ever made any payments to her [Ethel]. I don't recall any payments going to the plaintiff from George F. Harding, Sr. I knew that George F. Harding, Sr., was making payments to his nephews and nieces"; and subsequently he contradicted himself by saying that "As to Ethel Jones, I remember payments to her, too, as to payments made by George F. Harding, Sr." It is clear, however, from the testimony of Jessie Katz, the executrix, who had served as secretary to George F. Harding, Jr., since 1917, and the corroborative evidence of Gregory T. Van Meter that shortly after the death of George F. Harding, Sr., his son, George F. Harding, Jr., commenced making payments to Ethel which continued without interruption until his death in April 1939. These payments of $40 a month regularly, or the equivalent of 5 per cent on the principal gift of $10,000, began while George, Jr., was acting as

executor of his father's estate, which was not closed until 1919, and Abner Clark testified that George, Jr., had told him he made the payments in obedience to instructions from his father, who had also directed him to pay Ethel the principal of her gift in the same manner as the other children of Mary Harding Snyder had received the principal of their gifts under their grandfather's will. After George F. Harding, Jr.'s death in April 1939, plaintiff received her last monthly check of $40, dated earlier that month, and subsequently in November of the same year this suit was instituted.

When George F. Harding, Sr., died in 1915 he left a will naming his son, George, Jr., as the executor and devising to him all his property, subject to certain trusts. The only personal property listed in the inventory of the estate consisted of goods and chattels valued at $400, but it included ten parcels of real estate. The final report and account showed merely minor disbursements and no claims of creditors.

After the death of George F. Harding, Jr., Jessie Katz, as executrix, filed an inventory containing, *inter alia,* the following items: (1) a parcel of real estate acknowledged to have been received by descent from George F. Harding, Sr.; this parcel was not inventoried in the father's estate but shows as an item in the inventory of Abner C. Harding, the decedent's and plaintiff's grandfather; (2) two additional parcels of real estate acknowledged to have been received by descent from the decedent's father, George F. Harding, Sr.; these parcels had likewise not been inventoried in the father's estate; and (3) three further parcels of real estate which had been contained in the inventory of the estate of George F. Harding, Sr.

At the conclusion of the hearing the chancellor prepared a written opinion wherein he held, or at least assumed, that plaintiff was entitled to a legacy in trust under her grandfather's will, but could not recover from the estate of the trustee's son, George F.

Harding, Jr., because there was no proof that George, Jr., personally assumed or became legally obligated to pay the indebtedness of his father, and that her claim was barred by the Statute of Limitations (Ill. Rev. Stat. 1943, ch. 83 [Jones Ill. Stats. Ann. 107.259 *et seq.*]) and laches.

Preliminary to a discussion of the defenses which the chancellor held as a bar to plaintiff's recovery, two questions touching upon a construction of the will require consideration. It is first suggested by defendant, but not seriously urged, that "There is a grave question as to whether the testator intended to provide more than a total of $10,000 for all of the children of Mary." It is true that the will speaks of "the sum of Ten Thousand Dollars," but the language immediately following indicates that the testator intended each child to have $10,000, since he directed the trustee "to pay said investment [namely, the sum of $10,000] to each of them" upon each child's marrying or attaining the age of manhood, and that was the construction followed by the trustee who paid the $10,000 gifts to each of Mary's four older children and gave Abner Clark, Ethel's older brother, the fifth child, $5,000 during his (the trustee's) lifetime. George, Jr., as executor of his father's will, evidently adopted that construction, because he paid Abner Clark the remaining $5,000 after George F. Harding, Sr.'s death and told him that he had been directed by his father to also pay the principal to Ethel.

The second preliminary consideration urged is that since the bequests under the testator's will to the children of Mary Snyder gave to each child an immediate interest, the after-born plaintiff, Ethel, did not take under that will. It is argued, on the sole authority of *Lancaster v. Lancaster,* 187 Ill. 540, that where there is an immediate gift of interest without postponement, only those members of a class who are alive at the death of the testator will take. The *Lan-*

*caster* case involved the question whether a class gift includes persons who died before the testator, and in that proceeding distribution of principal was not postponed beyond the testator's death. In the case at bar, however, the will provided for postponement of principal until a child married or reached the age of manhood, and the decisions in this and other states are clearly to the effect that such postponement leaves the class open for after-born children. It was so held in *First Nat. Bank of Chicago v. McIntosh,* 366 Ill. 436 (decided in 1937). The testator in that proceeding had devised property to trustees "to be held by them in trust for the use and benefit of each and all of my grandchildren until the youngest grandchild living at the time of my death shall have attained the age of twenty-five (25) years," at which time distribution was to be made. The testator had four grandchildren when he died, and two more were born before the time of distribution. The court held that the after-born grandchildren should share in the gift, and cited in support of its conclusion the early case of *Handberry v. Doolittle,* 38 Ill. 202; *Howe v. Hodge,* 152 Ill. 252, and other decisions. In *Howe v. Hodge,* the testator gave directions to his executors in respect to the distribution of certain of his property among all his grandchildren as they should, respectively, arrive at the age of 30, and stated in his will: "My intention in disposing of the property named in this paragraph is to divide it equally among all my grandchildren." Commenting on this clause, the court said: "This language clearly points out both the subject and the objects of his bounty, and indicates a gift to his grandchildren, as a class, of the beneficial interest in and equitable title to all of the residuary estate. Such interest and title vested in the grandchildren immediately upon the death of the testator, but subject to open up and let in after-born grandchildren." As heretofore stated, Ethel, who was the youngest child

of Mary, was born a year after the testator's death but prior to the date when any child of Mary had married or reached the age of manhood, and it is therefore clear that since Ethel was born before the time the will first called for payment of principal, the class opened to admit her as a member. It is suggested that if the will should require the trustee to pay $10,000 to each of the children of Mary, he would have no way of knowing how many sums of $10,000 he would be obliged to pay over, if after-born children were to share. Such contingencies have arisen in cases where the executor and trustee were not the same person, or where the estate was barely solvent, but in this proceeding the executor, trustee and residuary beneficiary under Abner C. Harding's will were all one and the same person, and it appears that the estate was amply solvent to pay all children, whenever born, the sum of $10,000 apiece. In *Parker v. Leach,* 66 N. H. 416, 31 Atl. 19, the problem actually arose. The testator had there devised to each of the sons of David R. Leach the sum of $1,000, and to each of the daughters the sum of $500, to be paid as they arrived at the age of 21 years, and the balance of the estate was given to trustees for certain charitable purposes. At the date of the testator's death David R. Leach was 51 years of age and had seven children. One more child was born after the testator's death. In a proceeding by the executors for instructions, it was held that the after-born child should share with the other children of David R. Leach, and the executors were instructed to "settle their accounts and pass the remaining estate to the trustees, subject to the payment of all legacies which now or which may hereafter exist under the will, on the trustees' furnishing bonds to the executors to pay these legacies and save them harmless from not paying the same." In *Defflis v. Goldschmidt,* 1 Merivale 417, the testator bequeathed 2000 pounds to each of his sister's children, payable when they should at-

tain the age of 21. In a suit for instructions brought by the executor, the residuary beneficiary under the will contended that the gift should be confined to those children alive at the testator's death, but the master of the rolls held otherwise, saying: "I am of opinion, that it was the intention of this Testator not to exclude any of his sister's children, and that intention must be complied with, even to the extent of impounding the whole residue, should that appear to be necessary." The matter was then referred to a master in chancery to determine what would be a proper sum to set apart to answer the legacies of 2000 pounds to each child who might be born thereafter. From the context of the will in the case at bar and the circumstances adduced in evidence, it is obvious that the testator intended to provide for all of Mary's children, not merely those living at his death, and decisions, both in Illinois and in other jurisdictions, indicate that the wishes and intentions of the testator to benefit as many members of the class as possible should outweigh the inconvenience to the trustee of not knowing the extent of his obligation until some future date.

This leads to a consideration of whether plaintiff's right to recover her share of the gift in trust has been lost through the statute of limitations or laches. At the time of the trial Ethel Snyder Jones was almost 70 years of age, and it appears reasonably certain that she received interest on her legacy in accordance with the terms of the testator's will until the death of George F. Harding, Jr., in April 1939. The question therefore arises whether she had a cause of action for the recovery of anything prior to that date, because she instituted this proceeding shortly after George, Jr.'s death. Her grandfather's will did not require the trustee to pay over the principal upon the marriage or age of manhood of any of the children, but only "provided in his opinion they will make good use of it, but if not then to retain it & give in

the respective case the interest only." Since the trustee and his successor continued the payments of interest on the principal of the gift throughout the many years ending in 1939, plaintiff had no cause to complain, and she should not be chargeable with laches because she did not seek to recover the principal at some earlier date. The suggestion that in order to preserve her rights, it was incumbent upon her to attempt to coerce the trustee into doing something which the testator's will said need be done only in the trustee's discretion, is untenable, and to charge her with laches for not doing that which would have been rendered futile by the very terms of the will, cannot be sustained as a sound equitable doctrine.

In this connection it is argued that George F. Harding, Sr., in making his final report as executor of Abner C. Harding's estate, did not mention Ethel, although he did mention the other nieces and nephews, and it is urged that the order of the county court approving the final account and report should be interpreted as a construction of the will to exclude a gift to Ethel. The record of the Warren probate court discloses that notice had been served on all legatees, but at the time the report was filed and approved Ethel had not yet come of age and no guardian had ever been appointed for her. Therefore the most that can be claimed by this proceeding is that the failure to serve notice on Ethel amounted to a repudiation of the trust toward her; but that theory does not square with the facts, because it is not controverted that the trustee later acknowledged Ethel's right to a share before his death, nor is it denied that George, Jr., continued the monthly payments by specific direction of his father, the trustee. Therefore, even though the final report should, by a strain of logic, be construed as a repudiation, it was nevertheless subsequently revoked by the trustee and for many years thereafter plaintiff received her regular in-

terest payment. The facts adduced upon the trial indicate that there was never any breach of the trust toward Ethel prior to George F. Harding, Jr.'s death in April 1939. It is undisputed that plaintiff received a sum equal to interest on $10,000 at least from 1917 to 1939. The evidence of payments prior thereto is somewhat uncertain, because plaintiff was not competent to testify to the facts, and no other witnesses knew with any certainty whether or not Ethel had received payments prior to the trustee's death; but the statements made by George F. Harding, Sr., to Abner Clark and conversations of witnesses with George F. Harding, Jr., indicate that such payments were made and continued after George, Sr., died in 1915. Limitations or laches being affirmative defenses, defendant had the affirmative burden of establishing them. We find no evidence in the record of any repudiation or breach of the trust toward Ethel prior to 1939, notice of which was ever brought home to her; the undisputed evidence shows, rather, that the trust was fully performed by the trustee and his successor with respect to plaintiff's share, until shortly before suit was instituted. Although many years had elapsed since Abner C. Harding's death in 1874, that circumstance alone does not constitute laches. The rule is well settled that until the beneficiary of a trust has knowledge of a breach of trust on the part of the trustee, no cause of action accrues, and the beneficiary cannot be charged with laches. Professor Bogert, in his exhaustive treatise on Trusts and Trustees, vol. 4, sec. 951, pp. 2757 and 2758, states the rule as follows: ''Thus, if a trust has been in operation for forty years, and the trustee has been performing his duties, he cannot defend against future performance on the ground that his obligation under the trust is forty years old and hence barred by some statute of limitations. The length of time since he assumed the trust is not material. The only question of

importance is, How long is it since he violated the trust?'' The rule thus enunciated, that until notice of a repudiation or breach is brought home to the beneficiary there is no basis for the charge of laches, was followed in *Snyder v. Snyder,* 280 Ill. 467, and *Barnes v. Barnes,* 282 Ill. 593.

One of the grounds urged in support of the defense of laches and limitations is that plaintiff should have presented a claim against the estate of George F. Harding, Sr., when he died in 1915 or brought suit for the appointment of a successor trustee. That argument would be tenable if the monthly payments of interest had ceased with the death of the trustee, or if plaintiff had known that the trustee had commingled trust property with his own she could have presented a valid claim at the time of his death under the provisions of chapter 3, par. 202, Ill. Rev. Stat. 1943 [Jones Ill. Stats. Ann. 110.299]; but since George, Jr., then acting as executor of his father's estate, resumed the payments of interest, and acknowledged to Abner Clark, plaintiff's brother, that he was going to make Ethel the same payments her brothers and sisters had received, it would be unreasonable to hold that she was required to pursue either of these courses. The facts indicate that George, Jr., assumed the obligations of his father as trustee toward Abner Clark without formal appointment, and it is undisputed that Abner Clark filed no claim against the original trustee's estate but nevertheless received monthly payments of interest from George, Jr., for several years and finally received the balance of $5,000 principal from George, Jr., in 1919. Ethel undoubtedly knew of these circumstances, and therefore she had no occasion to file a claim against her uncle's estate or to bring suit for the appointment of a successor trustee. It was perfectly natural that she should be content to let George, Jr., act as successor trustee for her without a formal court order, since Abner Clark, who was evidently

willing to do so, had received full payment from George, Jr., without resorting to the filing of a claim or suit. In the light of these circumstances we hold that since defendant failed to establish by evidence either the fact that the trust was expressly repudiated or breached or the fact that notice of such repudiation or breach was brought home to plaintiff, the defense of laches and limitations, notwithstanding the span of years which elapsed since plaintiff's gift in trust was established, does not bar her from recovery. The provision in the will directing the trustee to keep the principal as part of his own estate, in the event any child died before receiving his or her share, thus making him a contingent remainderman of the trust which he administered, might account for the reluctance of George F. Harding, Sr., to pay over the principal to either Abner Clark or Ethel; and since the trustee could determine the time for paying the principal, Ethel was in no position to insist upon its payment but was obliged to be content with merely the receipt of interest. However, her willingness to receive interest all these years, during which she abided by the wishes of her uncle and cousin, whom she evidently trusted, should not operate to deny to her the rights of a beneficiary because she had taken no legal action when the terms of the will which established the trust, would have rendered such action futile.

There remains for consideration defendant's contention that under paragraph 1, chapter 59, Ill. Rev. Stat. 1943 [Jones Ill. Stats. Ann. 55.01], an executor cannot be charged upon a special promise to answer any debt out of his own estate, nor can an individual be charged to answer for the debt of another, unless the promise is in writing. The chancellor pointed out in his opinion that the statute had not been pleaded as a defense and therefore he did not predicate his conclusions thereon, but rather on the failure of plaintiff to prove that George F. Hard-

ing, Jr., personally assumed or became legally obligated to pay the indebtedness of his father. In reaching that conclusion we think he overlooked the significance of section 9 of the Statute of Frauds as applicable to the undisputed evidence. Section 9 reads as follows: ''All declarations or creations of trusts or confidences of any lands, tenements or hereditaments, shall be manifested and proved by some writing signed by the party who is by law enabled to declare such trust, or by his last will in writing; or else they shall be utterly void and of no effect: Provided, that resulting trust or trusts created by construction, implication or operation of law, need not be in writing, and the same may be proved by parol.'' Under the facts presented we entertain no doubt that George F. Harding, Jr., became successor trustee toward Abner Clark and Ethel either by construction, implication or operation of law. He treated the trust as an obligation to which he had succeeded after his father's death and acquired and exercised the same duties and responsibilities toward the beneficiaries of the trust as though he were the original trustee, at least as to the extent of the assets which he had acquired from his father's estate. It is a fundamental and well-settled rule that the death of a trustee does not terminate the trust; and that a trust cannot fail for want of a trustee. It would therefore follow that the trusts for the benefit of both Abner Clark and Ethel continued, and until a new trustee should be appointed, the legal representative of George F. Harding, Sr., was obligated to see that the trusts were executed. 1 Scott on Trusts, sec. 101; 3 Bogert on Trusts, sec. 529; *Simmons v. Barns*, 263 Mass. 472, 161 N. E. 821. George, Jr., assumed that obligation by commencing to make payments of $40 a month to Ethel shortly after his father's death and continuing those payments without interruption until he died in 1939. He likewise made monthly payments

after his father's death to Abner Clark and later paid him the balance of principal on his $10,000 legacy. Moreover, he told Abner Clark that he made these payments to him and to Ethel in obedience to his father's directions to see that they receive the same as their brothers and sisters had already received under his grandfather's will. In view of the fact that George F. Harding, Sr., was obligated as trustee toward plaintiff, that George F. Harding, Jr., received his father's estate charged with the payment of all debts and obligations and because of the natural relationship of trust and confidence which the relative position of the parties would naturally engender, as disclosed by the evidence, we think that George, Jr., became constructive trustee of the property acquired from his father, subject to the usual duties and responsibilities of a trustee, without the necessity of formal appointment. In *Housewright v. Steinke,* 326 Ill. 398, the court said that ''Constructive trusts are raised by equity for the purpose of working out right and justice though there was no intention of the party to create such relation, and often directly contrary to the intention of the one holding the legal title,'' and in *Kochorimbus v. Maggos,* 323 Ill. 510, it was held that ''A party may voluntarily assume a confidential relation towards another, and if he does so he cannot thereafter do any act for his own gain at the expense of that relation. . . . The origin of the confidence is immaterial. It may be moral, social, domestic or merely personal. If the confidence, in fact, exists, is reposed by the one party and accepted by the other, the relation is fiduciary, and equity will regard dealings between the parties according to the rules which apply to such relation.'' The relationship of the parties in this case required the application of the principles enunciated in these decisions, and we are therefore of opinion that the

property acquired by George, Jr., from his father's estate should be held subject to plaintiff's claim and constructively charged with the payment of her legacy under section 9 of the Statute of Frauds without any specific writing.

At the time of the trial plaintiff was close to 70 years of age, married and living with her husband in California. Her only surviving brother and sister both expressed the opinion that she is capable of making good use of her legacy, and no evidence was adduced to the contrary. Since the trustee is. no longer alive to determine whether the beneficiary could make good use of the legacy, it becomes a question for determination by the court. We perceive no reason why the payment of the principal should be longer deferred. It was undoubtedly intended by the testator to have been paid long since, and plaintiff is entitled to receive the principal either at once or in the due course of administration of the estate of George F. Harding, Jr.

Accordingly, the order of the court dismissing the complaint for want of equity is reversed, and the cause is remanded with directions that a decree be entered in favor of plaintiff, as prayed for in her complaint, and in harmony with the views herein expressed.

*Order reversed and cause remanded with directions.*
SULLIVAN, P. J., and SCANLAN, J., concur.