People of State of Illinois ex rel. John C. Byrnes et al., Plaintiffs-Appellees; People of State of Illinois ex rel. Tony Johnson and Charles Maeys, Intervening Plaintiffs-Appellees; People of State of Illinois ex rel. John A. McNamara, Intervening Plaintiff-Appellee, v. Stillman J. Stanard, Director of Department of Agriculture of State of Illinois; Maude Myers et al., Members of Illinois State Civil Service Commission; Orville E. Hodge, Auditor of Public Accounts of State of Illinois; and Elmer J. Hoffman, Treasurer of State of Illinois, Defendants-Appellants.

Gen. Nos. 46,441, 46,518.

First District, First Division.

June 13, 1955.

Rehearing denied July 5, 1955.

Released for publication September 15, 1955.

441

Latham Castle, Attorney General of State of Illinois, of Chicago, for defendants-appellants; William C.

Wines, Raymond S. Sarnow, and A. Zola Groves, Assistant Attorneys General, all of Chicago, of counsel.

Michael F. Ryan, of Chicago, for plaintiffs-appellees; Richard F. McPartlin, Jr., of Chicago, of counsel.

MR. PRESIDING JUSTICE BURKE delivered the opinion of the court.

A complaint for mandamus was filed on September 21, 1953 by eight former incumbents in civil service posts in the Department of Agriculture of the State of Illinois against the Director of that Department, the members of the Civil Service Commission, the Auditor of Public Accounts and the Treasurer to compel their restoration and the payment of unpaid back salaries. They maintain that their dismissals were in violation of applicable provisions of the civil service laws. The defendants moved to strike and dismiss, alleging, among other things, that the "change" in title in the positions from "Food and Dairies Inspector" to "Foods, Dairies and Standards Inspector" abolished the job and tenure. On November 4, 1953 Tony Johnson and Charles Maeys, by leave of court, filed their intervening complaint, adopting the allegations of the original complaint. The motion to strike and dismiss the original and intervening complaint was denied. Thereafter John A. McNamara, by leave of court, filed his intervening complaint, adopting the allegations of the original complaint, to which the defendants filed a motion to strike similar to their previous motion but adding the point that McNamara was guilty of laches. Plaintiffs moved for an order denying the motion to strike McNamara's intervening complaint and for judgment in behalf of other plaintiffs for failure to answer the original and first intervening complaint. The motion to strike McNamara's intervening complaint was sustained on the ground of laches and the case was dismissed as to him. Defendants elected

443

to abide by their motion to strike and dismiss and judgment was entered in favor of plaintiffs for failure of the defendants to answer. The court reserved jurisdiction to pass upon plaintiffs' rights to back salary. The defendants appealed. McNamara filed a cross-appeal and a separate appeal. The appeals have been consolidated for argument and disposition.

The complaints allege that on and prior to June 23, 1953 plaintiffs were actively engaged in the performance of their duties as civil service employees of the Department of Agriculture, all of their titles being "Foods and Dairies Inspectors I" except the plaintiff, Harold Thompson, whose title was "Foods and Dairies Inspector II"; that plaintiffs had duly qualified by civil service examination for their positions; that most of them had been appointed in the early part of 1952; that Thompson was originally certified under the title of "Food Inspector" which was changed in 1945 to "Field Investigator II" and in July 1951 to "Food and Dairies Inspector II"; that Thompson performed the same duties under these respective titles without a new or additional examination; and that the changes in Thompson's position were made pursuant to a general reclassification in the titles of state positions without in any way affecting his civil service status or his right to perform the duties of his position. The complaint set forth in detail some of the duties performed by the plaintiffs as Foods and Dairies Inspectors, which can be summarized as inspecting and examining all foods and food establishments for the purpose of enforcing the food and sanitary laws and protecting the health of the citizens. The complaint further alleged that in 1949 the Director of Agriculture instituted a program of administrative simplification of the organizational structure of the Department which resulted in the reduction of the number of divisions therein from 14 to 8, embracing a consolidation of the Division of Standards with the Division of Foods and

444

Dairies, the consolidation to be known as "Division of Foods, Dairies and Standards."

The complaint further alleged that the consolidation was not intended to and did not alter the functions theretofore performed by the Department and did not change the duties performed by the employees thereof; that one of the objectives of the organizational changes was to avoid duplication of effort and to better coordinate the work of the Weights and Measures Inspectors in the Division of Standards with the work of the Foods and Dairies Inspectors in the Division of Foods and Dairies; and that accordingly in September and October 1952 a special training school was conducted by the Department at Monticello for the purpose of explaining these administrative changes and to train Foods and Dairies Inspectors in the function of checking small scales in the stores that they visited so as to eliminate the necessity of having a Weights and Measures Inspector make a special trip to a food establishment being inspected by Foods and Dairies Inspectors. Plaintiffs further alleged that it was determined by the Civil Service Commission and the Director of the Department that the administrative consolidation would in no way affect the civil service status of the employees involved or result in the creation of any new position for which an examination would be necessary; that the employees attending the training school, including plaintiffs, were advised by the President of the Civil Service Commission that their civil service status would be in no way affected; that pursuant thereto in January 1953 the present Director of the Department issued to all of the plaintiffs identification cards designating that they were employed as "Standards Inspectors—Foods and Dairies Inspectors I" under the provisions of the Civil Administrative Code.

The complaint alleged that in order to conform the proposed changes in organizational structure and posi-

445

tion titles to the provisions of pertinent statutes, certain bills were presented to the 1953 session of the General Assembly to reflect and formalize the administrative changes noted, and that the purpose and effect of the passage of the bills and the intent of the legislature in passing the bills was to reflect their approval thereof for fiscal, payroll and accounting purposes; and that in so far as pertinent to plaintiffs, these bills merely changed the titles of "Foods and Dairies Inspectors I and II" to Foods, Dairies and Standards Inspectors I and II." The complaint also alleged that in the course of debate on House Bill 445, amending "An Act to standardize state position titles and salary rates" by changing the title of "Foods and Dairies Inspector" to "Foods, Dairies and Standards Inspector," it was stated that the bill was not in any way to affect the civil service status and employment of any incumbents of the positions, but was being introduced for payroll purposes only, since the Act prohibited the payment of any salaries for the positions covered thereby to any employee not having a title classified and designated in the Act; that the changing of the positions, offices or divisions involved did not in any way change the essential functions, duties and responsibilities of the positions, offices or divisions involved; and that the positions now known as "Foods, Dairies and Standards Inspectors I and II" are the identical positions heretofore known as "Foods and Dairies Inspectors I and II."

The complaint alleges that under date of June 20, 1953 all plaintiffs were advised by letter from the Director of Agriculture that the General Assembly by an enactment discontinued the Division of Foods and Dairies; that the position of Inspector in the Division of Foods and Dairies "has been abolished by specific Act of the 68th General Assembly which becomes effective June 30, 1953"; and that the positions of plaintiffs having been abolished, their connection with the

446

State would be severed as of that date. A few days subsequent to the receipt of the notice all of the plaintiffs received a Personnel Separation Notice from the Director advising them that they were "laid off" from their positions and giving as a reason for their separation, "Lay-off due to legislative action and for the reasons of efficiency and economy." The complaint further alleges that subsequently the Director of Agriculture employed noncivil service employees under the titles of "Foods, Dairies and Standards Inspectors I and II" to perform the identical duties previously performed by the plaintiffs in their respective positions; that the functions of the Department are necessary and vital for the preservation and health of the citizens of the State and for the protection of buyers and sellers of food commodities in the State; and that the divisions and positions were not abolished but had merely undergone a minor change in title. The complaint further states that no charges were filed against plaintiffs or hearing given them; that they had in effect been removed from their positions without compliance with the provisions of Section 12 of the State Civil Service Act [Ill. Rev. Stats. 1953, ch. 24½, § 12; Jones Ill. Stats. Ann. 23.012]; that the actions of the Director of Agriculture and the members of the Civil Service Commission amounted to a subterfuge to deprive plaintiffs of their civil service rights by substituting for the plaintiffs appointees not qualified by examination and training to perform the duties of the positions; that the substitution of others will not achieve economy or efficiency but will have the opposite effect; that the actions complained of amount to a subversion of the public policy of the State expressed in the Civil Service Act; that formal written demand for reinstatement was made August 12, 1953 upon the defendants; and that the demand was ignored.

██ Relying on People ex rel. Coryell v. Barrett, 320 Ill. App. 593; People ex rel. Rising v. Ames, 360

Ill. 31, and People ex rel. Behnke v. McLaughlin, 362 Ill. 274, defendants assert that the legislative change in classification operated to abolish the posts held by the plaintiffs and to terminate their civil service tenure, that this is true even though it is admitted that there has been no actual change in the duties performed by the incumbents of the posts bearing the former title and the incumbents of the posts bearing the amended title. Defendants also say that in any event the posts held by the plaintiffs were never recognized by any legislation and were created solely by a classification accomplished by the former Director when he of his own volition consolidated them under the Division of Foods and Dairies and the Division of Standards, and that the plaintiffs never qualified under the civil service laws even for the duties that they actually performed prior to the new legislation. Plaintiffs do not deny the power of the legislature to repeal civil service laws and they do not question the motive of the legislature. They state that the intent of the legislature should be carried out and they challenge the actions and motives of the Director of Agriculture in placing a false construction upon the legislative amendment. The courts have consistently held that mere changes in title and the natural accretion in the duties of a position do not operate to destroy an incumbent's civil service rights. People ex rel. Jacobs v. Coffin, 282 Ill. 599; City of Chicago v. Luthardt, 191 Ill. 516; People ex rel. Turner v. Johnson, 340 Ill. App. 171; People ex rel. Corbett v. Allman, 312 Ill. App. 484. Plaintiffs, calling attention to the change in title of plaintiff Thompson's position from Food Inspector to Field Investigator to Foods and Dairies Inspector, inquire whether adding a descriptive word to a title destroys substantial rights of tenure.

We have studied the three cases cited by defendants and are of the opinion that they do not support their position. In the Coryell case the appropriation for the

Attorney General's office was changed from one telephone operator at $1,500 per annum to one clerk at $1,500 per annum. We held that this complete change, coupled with the fact that under the civil service law clerks were in the exempt class, demonstrated the legislative intent to abolish the former post and create a new one. The pivotal question was the determination as to the legislative intent. In that case there was a complete change of title from one established position to another and different established position and the latter was specifically exempted from civil service under the provisions of Section 11 of the State Civil Service Act [Ill. Rev. Stats. 1953, ch. 24½, § 11; Jones Ill. Stats. Ann. 23.011] that all clerks employed in the offices of elective officers in the executive department shall be exempt from classified civil service. (Par. 13, Sec. 11, subpar. (14), Chap. 24½, Ill. Rev. Stat. 1953 [Jones Ill. Stats. Ann. 23.013, subd. (14)].) Because of the change from one established title to another connoting the potentiality of a difference in the method of selecting the incumbent, we decided that it was the legislative intent to abolish the former position and to allow a noncivil service appointment. In the case at bar an additional descriptive word has been added to an existing title for the purpose of conforming that title to a minor administrative change so as to more aptly describe the position and for the purpose of formalizing the title for payroll and accounting purposes. The Department's desire to implement the titles of the plaintiffs' positions by adding the word "Standards" could not have been effectively consummated without making the change in the Salary Stabilization Act, since that Act, in the interest of coercing uniformity, requires such conformation of titles for personnel and accounting reasons. Secs. 168—2, 168—5, Chap. 127, Ill. Rev. Stat. 1953 [Jones Ill. Stats. Ann. 23.080(2), 23.080(5)]. It will be observed that the President of the Civil Service Commission advised the plaintiffs

449

that the slight modification of their duties and title would in no way affect their civil service status, and that the Personnel Director of the Department issued to them identification cards confirming the addition of the word "Standards" to their title, without in any way indicating any effect on their status.

In the Rising case it appears that the General Assembly for the 1931–33 biennium appropriated for the salaries of "13 field agents at $1,800, 10 field agents at $2,100 and 6 inspectors at $2,100." The General Assembly for the biennium for 1933–35 appropriated for the salaries of "28 employees including 15 field agents at $1,620 and 13 field agents at $1,800." No appropriation was made in 1933 for inspectors. The plaintiffs were appointed inspectors in 1931 under civil service. They were dismissed July 10, 1933 because there was no appropriation for their positions. They demanded reinstatement claiming there was no bona fide ouster, but that their places were taken by temporary employees performing the same work. At that time Section 12 of the State Civil Service Act provided for removal without a hearing and that a removed employee had to petition the Commission within five days after removal and show that his removal was for political, racial or religious causes, or his discharge was final. The plaintiffs therein requested no hearings under Section 12. On August 1, 1933 they requested a hearing before the Commission under Section 14 of the Civil Service Act. The Commission granted a hearing and found that the duties of inspector and field agent were separate and distinct and that there was no evidence to justify complaints with reference to the enforcement of the Act as to the employment of field agents in the Division of Oil Inspection. The court held that plaintiffs were not entitled to the writ of mandamus because the allegations of the complaint showed that their rights were doubtful. The plaintiffs' complaint alleged that there were improprieties and bad faith in their removal and

yet it showed that the Commission had conducted an investigation and had found that the duties of inspector were different from those of field agent. The case did not decide that where the duties and salary of a position continue to be the same, that a civil service employee can be ousted and a temporary employee substituted simply because of a mere change of title having for its purpose a more apt description of the work being performed.

The Behnke case is also distinguishable from the case at bar. In that case there was no change in the title of the position of Food Inspector but the head of the Department, pursuant to the authority vested in him under the Civil Administrative Code, consolidated certain territories and transferred the plaintiffs' work to other Food Inspectors, thus reducing expenses. The Supreme Court held (362 Ill. 274, 277):

"It is not within the province of the courts to overrule the discretionary acts of directors of the different departments of State government in laying off employees, especially where this discretion has been exercised for reasons of economy, to consolidate territories and make for a more efficient distribution of the work among other employees."

It is not claimed by the defendants in the case at bar that the "lay-off" of the plaintiffs effected economy or reduced expenses, or that there was a consolidation of territories necessitating any layoff.

"An Act to standardize State position titles and salary rates" was passed by the legislature in 1943. The purpose of this Act was obviously to force uniformity in the titles of positions and in their salary rates and to help civil service employees. Section 3 of the Act (Par. 168—3, Chap. 127, Ill. Rev. Stat. 1953 [Jones Ill. Stats. Ann. 23.080(3)]) reads:

"The State Civil Service Commission shall assign to all positions subject to this pay plan an appropriate title established by or in accordance with this Act.

451

Such assignment shall be so made that all positions substantially similar with respect to the kind, difficulty, and responsibility of work are designated by a single title, and that the same pay range may, with equity, be applied to all positions designated by a single title. The State Civil Service Commission shall establish, for each title created by or in accordance with this Act, a specification descriptive of the duties thereby designated. . . ."

This Act resulted in a good many changes in the titles of positions without in any way affecting the substantial rights of the incumbents. The title of the Act as well as its provisions make it clear that the changes in title effected by it do not abolish the former positions, but conform them under their altered or modernized title. If the defendants' contention is correct then the legislature can never modernize a title to a position without destroying a faithful employee's means of livelihood except by an express saving clause.

The defendants state that the "legislative change in classification operated to abolish the posts held by the plaintiffs." The theory of the defendants would unduly restrict the Civil Service Commission and the Department Directors in carrying out their duties. The defendants criticize the action of the former Director in effecting a slight increase in the duties to be performed by plaintiffs and in adding a word to the title by which they were previously known. This criticism is without merit. The General Assembly provided for two basic systems for the carrying on of the business of the State government, the one expressed in the civil service law (Chap. 24½, Ill. Rev. Stat. 1953), and the other in the Civil Administrative Code (Chap. 127, Ill. Rev. Stat. 1953). The civil service law sets forth a comprehensive system for the recruiting, selection, training, transfer and removal of State employees. Section 3 provides that "the commission shall classify all of the places of employment in the classified service for the purpose of

establishing grades and the fixing and maintaining of standards of examinations hereinafter provided for. Each grade shall comprise places of employment having substantially similar duties." The Civil Administrative Code creates the various State departments for the carrying on of the State business. Section 16 of that code (Sec. 16, Chap. 127, Ill. Rev. Stat. 1953 [Jones Ill. Stats. Ann. 126.135]) provides that the director of each department is empowered to prescribe regulations, not inconsistent with law, for the government of his department, the conduct of its employees and clerks, the distribution and performance of its business. The legislature does not prescribe the duties of various positions and has delegated the function of classifying positions and of supervising employees to the Civil Service Commission and the department heads.

The case was decided on the pleadings. The motion to strike and dismiss admits that the Commission and the Director were engaged in an effort to increase the efficiency of the Department; that an instructional program in furtherance of this design was given to the plaintiffs; that both the Commission and the Director agreed that the slight addition of duties given to the plaintiffs did not create a new position requiring any additional examination; and that the present Director recognized this fact by issuing identification cards to all plaintiffs with their new title thereon. We are of the opinion that the trial judge was right in deciding that plaintiffs be restored and reassigned to duty in their respective positions.

■■ We turn to the contention of John A. McNamara that the court erred in dismissing his intervening complaint on the sole ground that he was guilty of laches. The motion to strike his intervening complaint alleged that his cause of action, if any, arose on July 1, 1953 and that since his intervening complaint was filed February 3, 1954, he was barred from obtain-

ing relief "because of the lapse of time." Laches is an equitable doctrine which, under proper circumstances, may be invoked in a mandamus case. Laches, however, is not mere passage of time. (Jones v. Katz, 325 Ill. App. 65; Oliver v. Crook, 321 Ill. App. 55, 66.) It is such neglect or omission to assert a right as, taken in conjunction with lapse of time and other circumstances causing prejudice to the opposite party relying thereon, operates as a bar. (Motel v. Andracki, 299 Ill. App. 166; Quist v. Dorn, 301 Ill. App. 264.) It is an inherent element of laches not only that a considerable time elapse, and that the one charging laches be prejudiced, but that the party sought to be charged have knowledge of the facts. (People ex rel. Turner v. Johnson, 340 Ill. App. 171, 177; Anderson v. Pettigrew Foundry Co., 297 Ill. App. 14.) It is only when by delay and negligence to assert a right that the opposing party is lulled into doing that which he would not have done or into omitting to do that which he would have done had the right been properly asserted that the defense of laches can be invoked or applied. (Cross v. Janes, 327 Ill. 538.) The record does not show that defendants were lulled into doing that which they might not have done or that they changed their position before McNamara filed his complaint. Although McNamara was not a party to the original notice and demand of August 12, 1953, or to the original complaint filed September 21, 1953, his position is identical with the original parties. If he had been an original party the position of the defendants would not have been altered. They have not shown that they would have acted in any different way or that they have been prejudiced.

██ Furthermore, it should be borne in mind that in addition to being notified that their positions were abolished because of a statutory modification of their titles, the plaintiffs were notified by the Director that they were being laid off "for the reasons of efficiency and economy." They could immediately dispute the

454

contention of the Director that their positions had been abolished by the statutory modification of their titles, but a different situation was presented as to their layoffs for alleged reasons of "efficiency and economy." The Director of a Department may, in good faith, lay off employees for lack of work or funds or for reasons of efficiency and economy. The plaintiffs had a right to presume that their layoffs were in good faith "for reasons of efficiency and economy" until such time as they had evidence to the contrary. That evidence, according to the complaint, was forthcoming in August 1953, when they discovered other persons had supplanted them, performing the identical duties formerly performed by plaintiffs. It was only then that plaintiffs had a complete cause of action to present to the court. When McNamara filed his intervening complaint on February 3, 1954, he was filing within a six-month period subsequent to the time that a full cause of action arose. We conclude that the trial judge was in error in deciding from the pleadings that McNamara was guilty of laches in filing his complaint.

For the reasons stated the judgment of the circuit court of Cook county is affirmed as to all the plaintiffs except John A. McNamara and it is reversed as to him, and the cause is remanded (as to him) with directions to overrule defendants' motion on the ground of laches, and for further proceedings consistent with the views expressed.

Judgment affirmed in part and reversed in part and cause remanded with directions.

FRIEND and NIEMEYER, JJ., concur.