STATE OF MISSOURI at the relation of HORACE MERRITT, Appellant, v. ROBERT E. GARDNER, County Assessor of Buchanan County.—148 S. W. (2d) 780.

Division Two, March 12, 1941.

*Meyer & Imbersteg* for relator; *Horace Merritt pro se.*

*Maurice Hoffman* and *John W. Mitchell* for respondent.

ELLISON, J.—This is a suit in equity to set aside an alleged excessive assessment for State and county taxes made as of June 1, 1937, by the respondent assessor of Buchanan County upon certain real estate in the city of St. Joseph, described as Lot 1, Block 21, Patee's Addition. Appellant purchased the property thereafter on September 1, 1938. The trial court sustained respondent's demurrer to the petition, appellant refused to plead further, and judgment went for respondent. Appellant appealed to the Kansas City Court of Appeals, but that court transferred the cause to this court, on the ground that appellate jurisdiction is here because a construction of the revenue laws is involved (Sec. 12, Art. VI, Const. Mo.).

The petition is long and pleads evidence and conclusions, but since it is challenged by demurrer, we are compelled to review it at some length. Summarized as much as possible, the facts alleged are that from September 22, 1933, to September 1, 1938, the real estate in question was owned by two clients of the appellant, a lawyer, as tenants in common. During that five year period the respondent was assessor of Buchanan County. The market value of real estate declined very materially during those years so that in 1938 it was not worth more than $2500. Nevertheless the respondent carried it forward from year to year on his assessment books at a valuation of $9,500, this being the assessed value in the prosperous years between 1923 and 1928. Appellant's clients were unable to obtain enough income from the property to pay the taxes based on said excessive valuation, together with upkeep, and efforts to sell it were futile. So they had appellant bring a partition suit in September, 1937. At that time taxes on the real estate were in arrears to the amount of $643.

The first effort to sell it at partition sale was ineffectual, because nobody would bid for it subject to that amount of taxes. Appellant then tried to persuade respondent to reduce the assessed valuation but he "very arbitrarily and imperiously refused to do so." Finally, however, he agreed to accept payment of the back taxes on the basis of a valuation of $9,000 instead of $9,500. This offer was not accepted, it seems. At any rate, one of the plaintiff tenants in common in the partition suit obtained a court order for a resale of the property. Appellant was the only bidder at that sale, held on September 1, 1938, and the lot was sold to him for $150, subject to city, county and state taxes for 1935 and 1936, aggregating $643.

Next the petition alleges that appellant, as attorney for one of the plaintiffs, "*had* filed formal application to the Equalization Board to reduce said valuation of $9,500 as made thereon by the defendant (respondent) as of June to September, 1937" (italics ours), this being the assessment upon which the 1938 taxes were based. We assume this allegation means the appeal, or application to review the assessment, had been filed before the second partition sale on September 1, 1938. The petition continues that this application "was received by said Board of which the defendant (respondent) was a member, and he seemed to dominate said Board and control them, and he arbitrarily oppressively refused to reduce the said valuation." It is then alleged that other members of the board put appellant off from time to time, saying they would take up the matter with respondent, though one of them conceded the assessment seemed to him "ridiculously and unreasonably high."

After appellant bought the lot at the partition sale he threatened to bring suit, but a board member requested him to refrain from doing so, stating that as soon as respondent returned from his vacation they would "fix it up satisfactory." When respondent did return

he declared the assessment would not be reduced. Finally the petition states appellant "has been unable to find any record made of said application or of the Board's action thereon if any was ever had or taken although the county clerk who had charge of its records after (appellant) inquired of him on the 14th day of December, 1938, made diligent search and was unable to find the application or any record of same or any reference to same in records."

Applying these facts to the law, appellant charges respondent has violated the requirements of Secs. 10965 and 10981, R. S. 1939, Mo. Stat. Ann., pp. 7886, 7898: by failing to assess the lot each years as of June 1 at its true value in money; but instead, has simply carried forward from year to year the high valuation prevailing during the prosperous years before 1929. This the respondent did, says the petition, arbitrarily and oppressively in disregard of the property owners' rights, and with full knowledge that real estate values had declined. Following that is an allegation that the lot could not reasonably and fairly be valued at more than $2,000—for the June, 1937, assessment, we assume—and that the buying public would not value it at more than $1,000.

The prayer is for equitable relief, it being alleged that appellant has no adequate remedy at law. Specifically it prays a decree declaring said $9,500 assessment unreasonable and violative of the statutes, supra; that said assessment be set aside; that respondent be directed to reassess the lot according to its true value at the time of such *reassessment*; and for general relief.

We think the trial court did not err in sustaining the demurrer to the petition. In the first place it fails to show the application to the county board of equalization for review of the assessment was filed within the time required by law. Under Sec. 10950, R. S. 1939, Sec. 9756, R. S. 1929, Mo. Stat. Ann., p. 7872, it was the respondent assessor's duty to make the assessment between June 1, 1937, and January 1, 1938. Next he was bound by Sec. 10990, R. S. 1939, Mo. Stat. Ann., p. 7903, to file a copy of his assessment book with the county clerk on or before January 20, 1938. The same section required the county clerk to make and send an abstract of the assessment book to the State Auditor on or before February 20, 1938.

If the owners of the lot (appellant's clients in the partition suit) considered themselves aggrieved by the assessment they were required by Sec. 10992, R. S. 1939, Mo. Stat. Ann., p. 7905, to prosecute an appeal by verified written complaint to the county board of equalization; and under Sec. 11004, R. S. 1939, Mo. Stat. Ann., p. 7913, it was the duty of that board to determine the appeal in a summary way. Buchanan County having a population of 98,633 (between 70,000 and 100,000) the date for the first meeting of its board of equalization was the first Monday in March, 1938, as fixed by Section 11001, Revised Statutes 1939, Mo. Stat. Ann., p.

7910. At this meeting the board is required by Section 11002, Revised Statutes 1939, Mo. Stat. Ann., p. 7910, *immediately* to proceed to equalize the valuation and assessment of all real and personal property. Under Section 11003, Revised Statutes 1939, Mo. Stat. Ann., p. 7912, if any land valuations are raised notice must be given and a further meeting held on the fourth Monday in March to hear objections thereto. This same section also requires the board to reduce assessed valuations of land deemed overvalued. It is at this meeting that appeals from excessive assessments are heard.

▮ We do not say the county board of equalization in this case lacked jurisdiction in its discretion to consider an appeal from alleged overvaluation filed later than the fourth Monday in March and before final adjournment, but we do hold it could not be *compelled* to entertain appeals lodged after that date. [The St. Joseph Lead Co. v. Simms, 108 Mo. 222, 18 S. W. 906, 105 A. L. R., p. 624, note.] It is unnecessary to consider this question critically for appellant's petition in the instant case does not show when the appeal was filed, except that it was before September 1, 1938. That may have been five months after the meeting on the fourth Monday in March, at which such appeals were to be determined. But another statute, Section 11048, Revised Statutes 1939, Section 9876, Revised Statutes 1929, Mo. Stat. Ann., p. 7950, requires the county clerk to adjust and correct the tax book within 90 days (3 months) and Section 11052, Revised Statutes 1939, Mo. Stat. Ann., p. 7952, directs that the book be delivered to the collector as soon as may be after such corrections and adjustments are made. All this establishes that the petition in the suit below failed to show the appeal was filed in time.

▮ Another shortcoming in the petition is that it does not show, even by the evidence pleaded, that the appeal from the assessment was ever actually filed or acted upon by the board of equalization. Section 11004, *supra*, provides the county clerk shall keep an accurate record of the proceedings and orders of the board. It could speak only through that record. [State ex rel. Bank of Belton v. Wray, 55 Mo. App. 646; Joyce Surveying Co. v. City of St. Louis, 68 Mo. App. 182, 187.] Appellant's conversations with individual members of the board would not establish that official action had been taken. [Nodaway County v. Williams (Mo. Div. 2), 199 S. W. 224, 227(4).]

▮. But even if we concede the evidence pleaded makes a prima facie showing that the board of equalization refused to act on the appeal, or denied it, appellant had no right to bring this suit in equity to cancel the assessment before he had exhausted his statutory remedy. Section 11027(3), Revised Statutes 1939, Mo. Stat. Ann., p. 7930, authorizes the State Tax Commission "to receive all complaints as to property . . . that has been fraudulently or improperly assessed, to investigate the same and to institute such pro-

ceedings as will correct the irregularity complained of . . ." Section 11028, Revised Statutes 1939, Mo. Stat. Ann., p. 7934, provides that "*after the various assessment rolls required to be made by law shall have been passed upon by the several boards of equalization and prior to the making and delivery of the tax rolls to the proper officers for collection of the taxes,* the several assessment rolls shall be subject to inspection by the commission . . . . and in case it shall . . . be made to appear to said commission by written complaint of any taxpayer that . . . . individual assessments have not been made in compliance with law,"—the commission may require the assessor to appear within five days at the county seat, and after a hearing may enter the proper assessment.

█ This court en banc held in Brinkerhoff-Faris Trust & Savings Co. v. Hill, 323 Mo. 180, 193-4, 19 S. W. (2d) 746, 751 (8, 9) which has been followed in at least seven recent decisions, that a taxpayer who claims his property has been fraudulently assessed, must exhaust his remedy under these statutes before he can resort to equity; and that "the remedy provided by statute is adequate, certain and complete." This decision further holds that to obtain relief from the State Tax Commission the taxpayer must file his complaint before the tax books have been delivered to the tax collector. The petition in the instant case nowhere alleges any attempt on appellant's part to complain to the Tax Commission; nor is it shown that there was time to do so after he filed his appeal with the county board of equalization.

In Washington University v. Baumann, 341 Mo. 708, 726, 108 S. W. (2d) 403, 413, this court affirmed a decree enjoining the tax collector of the City of St. Louis from collecting taxes on the University's real estate, although the University had taken no steps to obtain relief from the St. Louis Board of Equalization or the State Tax Commission. But the ruling was based on the special circumstances of the case, and the decision expressly disclaimed an intent to "(limit) the effect and authority of the Brinkerhoff-Faris case," other than to hold the initial remedy there proposed was not *always* exclusive.

In his brief here appellant quotes extensively from 1 Pomeroy's Equity Jurisprudence (1 Ed.), sec. 260, pp. 276-7. The first excerpt set out deals with injunctive relief against assessments for local improvements, granted to a number of separate lot owners joining as plaintiffs or to one owner bringing a class suit. That, of course, has nothing to do with the instant case. The second excerpt does say a suit in equity brought by a single taxpayer suing on his own account will sometimes be sustained, to annul any and every kind of tax assessment laid either for general or special purposes, whenever such tax is illegal—as against every sort of objection urged against a judicial interference with the governmental and executive

function of taxation. The text goes on to say the legal remedy of the taxpayer by an action for damages or certiorari is wholly inadequate. But our statutes afford a specific and much broader remedy by appeals to the local board of equalization and the State Tax Commission. The rule is settled in Missouri by the Brinkerhoff-Faris case and those following it. As stated in that decision if taxpayers all over the State were permitted to harass the taxing authorities by bringing separate equity suits based on alleged discriminatory or excessive assessments, ''the collection of the revenue would be so. obstructed that both State and local governments would be seriously crippled, if nothing more.''

There is another statute, Section 11118, Revised Statutes 1939, Section 9946, Revised Statutes 1929, Mo. Stat. Ann., p. 7989, Laws Mo. 1933, p. 424, which appellant seems to have overlooked. It authorizes the. *county court* (not the county board of equalization) in its discretion to correct any errors which may appear in connection with the assessment and levy of taxes, including those of valuation, whether the taxes be delinquent or not, until they are paid or collected, with all costs. We are not called upon here to construe this statute; but suggest that appellant may possibly obtain relief from the county court thereunder if the assessment complained of is as oppressive as his petition alleges. [See State ex rel. Brewer v. Federal Lead Co., 265 Fed. 305; State ex rel. Teare v. Dungan, 265 Mo. 353, 373, 177 S. W. 604, 610(5).]

We find no error in the record, and affirm the judgment. All concur.