Leo A. DREY, Appellant,

v.

STATE TAX COMMISSION of Missouri, James M. Robertson, Chairman, and John A. Williams, J. Ralph Hutchison, Commissioners of the State Tax Commission of Missouri, Jink Smith, Assessor, Shannon County, Missouri, and Donald D. Searcy, Collector of Shannon County, Missouri, Respondents.

No. 46880.

Supreme Court of Missouri,

Division No. 2.

May 11, 1959.

Henry C. Lowenhaupt, St. Louis, Robert S. Allen, St. Louis, for plaintiff-appellant.

John M. Dalton, Atty. Gen., Donal D. Guffey, Asst. Atty. Gen., for respondent State Tax Commission.

Friend B. Greene, Pros. Atty., Shannon County, Eminence, for respondents Jink Smith, and Donald D. Searcy.

STOCKARD, Commissioner.

Plaintiff has appealed from the judgment of the Circuit Court of Shannon County which (1) dismissed his petition

insofar as it purported to constitute a suit in equity for relief from an illegal and excessive assessment of his property, and (2) affirmed the order and decision of the State Tax Commission of Missouri (hereafter referred to as the Commission) insofar as the petition sought a review of the action of the Commission in dismissing his appeal to it from the Board of Equalization of Shannon County. Jurisdiction is in this court because the construction of the revenue laws of this state is involved. Article V, Section 3, Constitution of Missouri 1945, V.A.M.S.

From the allegations in the petition and from the records of this court in case number 45,994 we note the following facts as reflecting on the history of the present litigation. The assessor of Shannon County determined the assessed valuation for the year 1955 of approximately 87,415 acres of land belonging to plaintiff to be the amount of $376,655, or approximately $4.30 an acre. That assessment was appealed by plaintiff, and the Circuit Court of St. Louis County (which then was the proper venue for an appeal under the Administrative Procedure Act from the Commission when the appellant was a resident of St. Louis County) determined and held that when plaintiff purchased the land in question from the National Distillers Product Corporation it reserved and retained the right to enter upon the land for a period of six years and remove standing timber; that the value of the standing timber was included in the assessment of the land; and "Since all the evidence offered by the defendant [assessor] at the hearing before the State Tax Commission is based on the improper legal assumption that the plaintiff is to be taxed for all the timber on the acreage, any decision of the State Tax Commission based thereon is unlawful since it purports to charge plaintiff with 'real property' that he does not own." The court's judgment was that the property be assessed in the amount of $108,207.60 and that the assessor correct his records to so indicate. The Commission did not appeal from that judg-

ment, but the Shannon County assessor filed a notice of appeal. After a delay in filing the transcript in this court, the appeal was dismissed for failure of appellant to perfect the appeal in that no briefs were filed.

We are not able to determine the assessed valuation of plaintiff's land for the year 1956. However, for the year 1957 the assessor determined the assessed valuation of 88,725.55 acres of land, which included the land involved in the previous suit, to be $440,775 or $4.96 per acre. This was considerably more than plaintiff paid for the land. It is this assessment for the year 1957 which gives rise to this litigation.

Plaintiff filed a petition with the Commission pursuant to Section 138.430 (all statutory references are to RSMo 1949, V.A.M. S. unless otherwise stated) to appeal from the county board of equalization, and the Commission set the case for hearing on December 18, 1957. At that time, and apparently with no advance notice to plaintiff that the question was to be raised, the prosecuting attorney of Shannon County made an oral motion to dismiss the appeal "for the reason that the record of the Board of Equalization of Shannon County, Missouri, does not show that an appeal was made from the assessment valuation as fixed by the Assessor of Shannon County, Missouri, to the County Board of Equalization of Shannon County." The records of the county board of equalization are silent on the question of whether or not an appeal was taken by plaintiff. The Commission proceeded to hear oral evidence on whether or not an appeal was in fact taken, and it then entered its decision dismissing plaintiff's appeal to it because plaintiff had not appealed to the county board of equalization. Plaintiff does not on this appeal challenge the proposition that an appeal, because of excessive or otherwise improper valuation of property for assessment purposes, to the Commission lies only from the county board of equalization "under rules prescribed by the state tax commission," and not directly to the Commission from the action of the county assessor. Section

138.430; Rules and Regulations of the State Tax Commission, par. III, April 11, 1956; Foster Bros. Mfg. Co. v. State Tax Commission of Missouri, Mo.Sup., 319 S.W.2d 590.

Plaintiff filed his petition in the Circuit Court of Shannon County for judicial review of the above action of the Commission pursuant to the Administrative Procedure Act. (Subsequent to the appeal to the Circuit Court of St. Louis County in the previous case in which the appeal to this court was not perfected, Section 138.470 was amended to provide that the venue for such judicial review should be in "the county where the real property is situated"). At the hearing, counsel for the Commission objected to the admission of "any testimony" and to "the introduction of any further testimony outside of the record presented to the Tax Commission." The trial court stated that "I will carry it [the objection] along with the evidence." However, the case was then continued, and the next entry in the transcript shows that the trial court dismissed the petition insofar as it purported to constitute a suit in equity, and it affirmed the action of the Commission in dismissing the appeal to it on the ground that its decision and order was supported by competent and substantial evidence upon the record.

■ It is evident that the trial court did not weigh the evidence and determine the facts for itself but determined only whether the action of the Commission was "supported by competent and substantial evidence upon the whole record." The Commission, in its brief to this court, apparently contends that this was all the trial court was authorized to do. But that is not necessarily correct as to all matters, and it is not correct in this case. Par. 3 of Section 536.140 provides that "Whenever the action of the agency being reviewed does not involve the exercise by the agency of administrative discretion in the light of the facts, but involves only the application by the agency of the law to the facts, the court may weigh the evidence for itself and determine the facts accordingly," and par. 4 authorizes, under certain circumstances, the circuit court to "hear and consider additional evidence." The action of the Commission from which plaintiff appealed was that of dismissing his appeal, and certainly that action did not involve "the exercise * * * of administrative discretion," but involved "only the application * * * of the law to the facts." Therefore, on this appeal, as the trial court should have done, we shall weigh the evidence and make our own determination of the facts and apply the law to those facts, but in doing so we "shall give due weight to the opportunity of the agency to observe the witnesses." Section 536.140, par. 3.

We must first consider the Commission's contention, although it did not consider itself so bound, that the record of the proceedings and orders of the county board of equalization prepared by the county clerk are conclusive on plaintiff's right to appeal to it, and since those records do not affirmatively show an appeal by plaintiff to the county board of equalization "such fact standing alone would * * * preclude the jurisdiction of the State Tax Commission" to entertain plaintiff's appeal. The Commission relies upon Section 138.010 which provides that the county clerk shall be secretary of the county board of equalization, and upon Section 138.060 which provides that he "shall keep an accurate record of the proceedings and orders of the board." We note that the records made by the county clerk of the 1957 meeting of the board of equalization fall short of what is contemplated by Section 138.060 in that the clerk apparently was of the erroneous opinion that he was to make a record of the proceedings and orders only if a change in the assessment resulted from the action of the board.

In support of its contention that the inaccurate and incomplete record prepared by the clerk is conclusive, the Commission cites State ex rel. Merritt v. Gardner, 347 Mo. 569, 148 S.W.2d 780 and State ex rel.

Bank of Belton v. Wray, 55 Mo.App. 646. In the Wray case a property owner sought in the circuit court a writ of certiorari to the county board of equalization on the basis that the board had illegally raised the assessment, as returned by the assessor, without giving the owner the required notice and opportunity to be heard. The record of the county board of equalization certified to the circuit court showed that the property owner not only had notice of the increase but that he appeared and contested the increase. The property owner then contended that the record as certified was not in fact the correct record, but that an earlier record prepared by the clerk's son was the correct one. The court held that the record of the board was the one prepared by the clerk and certified to the circuit court, "and from this record the jurisdiction of the board to raise relator's assessment is manifest and it is conclusive, too, on the relator." In the Gardner case the court was passing only on the question of whether a petition was sufficient to state a cause for relief in equity from an alleged excessive assessment. It was held that the petition was insufficient because it affirmatively showed that plaintiff had not exhausted his statutory remedy, and in the course of the opinion the statement was made, though unnecessary to the result reached, that the county board could "speak" only through the record kept by the clerk, and that the landowner's conversation with individual members of the board "would not establish that official action had been taken. [347 Mo. 569, 148 S.W.2d 783.]"

■ We agree with the Wray case where the proceeding was by certiorari. We do not consider the Gardner case as holding that in determining whether the Commission has jurisdiction to review the action of a county board of equalization the failure of the record prepared by the clerk to show an appeal to it is conclusive that no appeal was in fact taken. State ex rel. Koeln v. Title Guaranty Trust Co., 261 Mo. 448, 169 S.W. 28, 29, was a suit to collect taxes, and the defendant contended that property had been illegally added by the board of equalization. The record of the board of equalization showed an increase in the valuation of the property already assessed, but the actual fact was that the board had added the valuation of what it adjudged to be omitted property but which was property not legally taxable against the defendant, and it had then reduced the total amount of the valuation by thirty per cent. This court held that "it is our duty to go beyond the surface of things and to discover what the real facts were. This is not a proceeding by certiorari, where the court must take the record of the board as conclusive * * *." Neither an appeal to the Commission from the board of equalization nor an appeal to the circuit court from the Commission is by certiorari, and an appeal is not on the record made before the county board of equalization or necessarily on the record made before the Commission. Therefore, the absence of an affirmative showing by the clerk that a landowner appealed to the board of equalization should not be conclusive of his right to appeal from the board to the Commission. Therefore, upon this appeal we shall review the whole record made before the Commission to determine for ourselves whether in fact an appeal was taken to the board of equalization, and whether under the law as applied to the facts the action of the Commission in dismissing plaintiff's appeal was correct.

■ Section 10992 RSMo 1939 provided that an appeal to the board of equalization "shall be in writing, and verified by affidavit and shall state specifically the grounds of the appeal and the matter or thing complained of, and no other matter shall be considered by the board." This was changed in 1945 to provide, as at present, that "Every person who thinks himself aggrieved by the assessment of his property may appeal to the county board of equalization, in person, by attorney or agent, or in writing," Laws of Missouri

1945, p. 1782; Section 137.275. It is evident that formalities in perfecting an appeal to the county board of equalization were eliminated, and the word "appeal" as it now appears in Section 137.275 is not used in a technical sense. It is sufficient if the party aggrieved by the assessment made by the assessor let it be known to the county board of equalization either in person, by attorney or agent, or in writing that he is objecting to or protesting the same, and the board is specifically directed to determine all such appeals "in a summary way." Section 138.060.

The evidence taken before the Commission shows that in May or June before the board of equalization met on July 8, Mr. Lowenhaupt of St. Louis Missouri, an attorney representing plaintiff, met with the prosecuting attorney of Shannon County and with Mr. J. D. Hodge, Presiding Judge of the Shannon County Court, and with "maybe one of the other associate judges," and a discussion was had "with respect to reducing the assessment." The members of the county court are members of the county board of equalization. Section 138.010. Subsequently thereto, but before the board met, the prosecuting attorney wrote Mr. Lowenhaupt that "I understand that the members of the board [of equalization] were not in favor of that reduction." This was not a correct report if it was intended to mean that each individual member of the board had that view because, according to the county clerk, one of the members of the board "kept hammering at this board constantly the five full days * * * to reduce" the assessment, and when a vote was taken on the last day on whether plaintiff's assessment should be reduced it was three to two against making any change.

When the board of equalization met on July 8, Mr. Ben Searcy, an attorney of Eminence, Missouri, who was employed by plaintiff on a general retainer to look after his tax matters, and whose representation of plaintiff was known, appeared before the board. He stated that he appeared on "three matters, as I recall," and that "Mr. Leo Drey's assessment was discussed." However, he testified that he expected "a St. Louis lawyer" to be there, and he did not "formally appear" that morning, but he "expected to do what I could in behalf of Mr. Drey as a client." He admitted he did not appear in his "official capacity to file a petition." The clerk testified that Mr. Searcy said he was not representing plaintiff, and the assessor testified that Mr. Searcy said he was representing "Anna C. Reinhart and Terry Moore." Mr. Searcy testified that he did not ask the board "to consider *officially* the assessment of Leo Drey *on the 8th day of July*." The clerk stated that a decision on an appeal is made "anytime they ask for it." When asked if "the Leo Drey appeal was called to your attention on this Monday, July 8th," the presiding judge of the county court replied "just among us" and that he did not "remember him [Mr. Searcy] a-callin' it to our attention." The county clerk testified that after Mr. Searcy's appearance on July 8 "They was some discussion that followed" but he could not tell "what all followed" and then "it was dismissed that day." He later denied that plaintiff's appeal was dismissed but stated that "it was discussed that day," and that the board took a vot on Friday, July 12, and "it was ultimately denied." The assessor testified that there was an attempt in the board "to compromise."

This proceeding of the board in discussing plaintiff's assessment and its order not to change the assessment is in no way, even by inference or reference, reflected in the records of the board. The clerk attempted to explain this on the basis that the vote "was unofficially," and that the board "was not acting official on it through a petition." Sometime on Friday, apparently after the vote was taken, Mr. Searcy returned to the board and, according to the clerk, inquired if "we had done anything on the Leo Drey case and we told him that we had not."

In the examination of the county clerk, the presiding judge of the county court and the assessor, the prosecuting attorney and the two members of the Commission who were present brought out by leading and very suggestive questions that when the board discussed the assessment of plaintiff's land and took a vote thereon it was acting under its general authority to equalize taxes and not by reason of an appeal by plaintiff. The questioning, and some of the answers, indicated a general misunderstanding to the effect that in order to perfect an appeal to the board of equalization a formal petition was necessary or that there had to be an appearance in an "official capacity to file a petition."

At the conclusion of the testimony the chairman of the Commission announced that "I think that the board's discussion of this case was merely in their duties as in equalization over the county." Formal findings and conclusions of law were entered to the effect that no appeal was taken by plaintiff to the county board of equalization, and that by reason thereof the Commission did not have jurisdiction of plaintiff's appeal to it.

The jurisdiction of the board of equalization pertaining to appeals, Section 138.060, and its jurisdiction in the equalization of taxes, Section 138.050, are overlapping in the respect that the board is authorized to lower valuations, and perhaps raise them, under either procedure for reasons that are the same. Therefore, if the landowner has objected to or protested the assesssment it is a matter of intention on the part of the board whether it considers the assessment pursuant to the landowner's protest or by reason of its equalization authority. Subsequent expressions of individual members of the board in response to very suggestive questions as to their state of mind or intent when they discussed and voted on whether a change should be made in the assessment of plaintiff's land are not persuasive.

The fact that the board knew plaintiff was objecting to the assessment, that plaintiff's attorney appeared and discussed the assessment with the board, that the members of the board then discussed the assessment among themselves and attempted to reach a compromise concerning it, and that the board subsequently voted on whether to change the assessment, establishes to our satisfaction that the board considered the assessment of plaintiff's land and took a vote on whether the assessment should be changed by reason of plaintiff's protest, as distinguished from a consideration of the assessment only for purposes of equalization.

■ It is the clearly announced legislative policy that proceedings before a county board of equalization shall be conducted in a summary way, and in 1945 the Legislature expressly eliminated the necessity of complying with any formal requirements in order to perfect an appeal to the board. We see no reason why a protesting landowner, in order to establish his statutory right to appeal to the Commission, should now be held to a stricter formality than the board is held in its proceedings. Therefore, we conclude and hold that plaintiff did perfect an appeal to the board of equalization within the meaning of Section 137.275, and that the Commission should have accepted jurisdiction of the appeal by plaintiff to it and performed its statutory duty to "investigate all such appeals and * * * correct any assessment which is shown to be unlawful, unfair, improper, arbitrary or capricious." Section 138.430.

By reason of the above conclusion we do not rule whether plaintiff's petition would have been sufficient to entitle him to any equitable relief if presented for that purpose alone. Since he is entitled to perfect his appeal to the Commission and then, if desired, obtain judicial review of the Commission's decision pursuant to Chapter 536, his legal remedies have not yet been exhausted, and any suit in equity would be premature.

That part of the judgment of the circuit court affirming the decision and order of

the Commission dismissing plaintiff's petition for review of the assessment of the lands described therein is reversed and the cause is remanded with directions that the circuit court remand the cause to the Commission for further proceedings consistent with the views here expressed.

BOHLING, C., concurs.

BARRETT, C., concurs in result.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All concur.