**STATE of Missouri ex rel. Joe M. KNOWLES, Appellant,**

v.

**Phyllis J. RESER, Director, Division of Family Services of the State of Missouri, Respondent.**

**No. WD 32638.**

Missouri Court of Appeals,
Western District.

March 30, 1982.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied May 4, 1982.

Dale C. Doerhoff, Jefferson City, for appellant; Cook, Vetter & Doerhoff, Jefferson City, of counsel.

John Ashcroft, Atty. Gen., Louren Wood, Asst. Atty. Gen., Jefferson City, for respondent.

Before SHANGLER, P. J., and PRITCHARD and DIXON, JJ.

PRITCHARD, Judge.

This action began upon a petition for writ of mandamus asking that the trial court reinstate appellant as an employee of the Division of Family Services, Research and Statistics Unit, with a classification of Research Analyst IV, at a salary of $1,524 per month. The trial court issued an alternative writ of mandamus but, after hearing, quashed it as being improvidently granted. Appellant filed an application for review before the Personnel Review Board which denied it on the ground that it had no jurisdiction in a case of layoff of an employee.

Appellant pleaded that respondent advised him that she was laying him off effective at the close of the working day, January 31, 1978, for the reason of budget limitations and that the class of Research Analyst IV was not included in the budget for fiscal year 1978. Respondent's letter of dismissal, incorporated by reference in the petition, recited further, "we are deleting the position of Research Analyst IV which you hold", and "We no longer have the need for a person in the classification of Research Analyst IV and find it necessary to terminate your employment."

Since 1970, appellant had been a member of the Missouri State Merit System assigned to the Division of Family Services. Through promotion and assignment he became Assistant Chief, Research and Statistics, in 1972 in Jefferson City, becoming in 1975, in the same position, a member of the Electronic Data Processing Unit of the Administrative Services Section. Effective June 1, 1976, he was transferred to the position of Research Analyst IV in a special project called Medicaid Management Information System which was a part of the Electronic Data Processing Unit. As Research Analyst IV, he was assigned back to the Research and Statistics Unit in the Administrative Services Section in January, 1977.

In December, 1977, the Finance Director of the Division notified its Director that based upon payroll expenditures within the Administrative Services Division for the first five months of the fiscal year (beginning July 1, 1977), there was a projected overrun of about $220,000. The payroll overrun projection of Administrative Services was computed by comparing the total personnel appropriation, $7,378,031, minus the 3% Governor's reserve under § 33.290, RSMo 1978, divided by 12 months, with the average monthly payroll actually expended during the first five months of the fiscal year, 1978. As to the Research and Statistics Unit, where appellant was employed, the projection showed monthly expenditures of $14,316, as against an average allocation of appropriations of $11,349 monthly. This would have resulted in an end of year salaries overrun of $35,607 without consideration of the 3% reserve, or $33,370 with that consideration. The Director instructed all unit heads to seek solutions, and the head of Research and Statistics recommended that two employees' salaries, $2,458, be transferred to the Social Services Section, and that appellant be laid off from his $1,524 monthly position. This recommendation was followed by respondent Director, and she gave written notice to appellant that he would be laid off effective February 1, 1978, due to budget limitations, the absence of the position classification for Research Analyst IV in the 1978 fiscal year budget, and the lack of any further need of that position. Appellant then was employed at lesser salaries in the Division of Probation and Parole, the Division of Youth Services, and the Division of Planning and

Budget, all within the Department of Social Services.

In the spring of 1977, the Division of Family Services, in preparing its fiscal year 1978 budget, requested $39,800 for an "A.F.D.C. Demonstration Project", but no funds were appropriated therefor by the General Assembly. Nonetheless, the Division decided to proceed with the project and use the money appropriated from administrative services. Two employees were involved in this project, at total salaries of $2,458 monthly, which was charged against the Research and Statistics Unit allocation for the first seven months of fiscal year 1978 (a total of $17,206). Mr. Remmert, in charge of the research unit, discovered that the salaries of the two employees were being charged against it in November, 1977, and succeeded in having them transferred to the Social Services Section, effective February 1, 1978, for funding purposes only, but that transfer was not sufficient to avoid the projected overrun for the Unit.

A request for appropriation for Research Analyst IV, classification 0434, appellant's title, was included in the fiscal year 1978 request for appropriation. Apparently, respondent's statement in the letter of dismissal to appellant that it was not included is in error. There is evidence that funding for that position has been requested for the subsequent years, 1979, 1980 and 1981, but the position has not been occupied as such since appellant's discharge.

Although the 1978 appropriation specified that full-time equivalent (F.T.E.) employees not exceed 706.5, beginning in July, 1977, there were 718.54; August, 711.61; September, 709.92; October, 708.82; November, 696.69; December, 685.18, and January, 1978, 676.24. Through June, 1978, FTE was at 675.52, with an average for the year of 684.52.

The actual expenditures for personal services to the end of fiscal year 1978 were $145,577, less the amount of the 3% reserve, $25,385, which was released in April, 1978. There was $9,392 surplus in Research and Statistics, without consideration of the 3% reserve, and $7,155 with that consideration.

It thus appears that there would have been sufficient funds to have continued appellant's employment for five months, but that fact does not determine the issue—that of respondent's duty and discretion to determine the expenditure of funds within the Division.

It is provided in § 36.360, RSMo 1978, "In accordance with the regulations, an appointing authority *may* lay off an employee in a position subject to this law *whenever he deems it necessary* by reason of shortage of work *or funds*, or the abolition of a position or other material change in duties or organization. * * *." [Italics added.] Under § 33.290, the governor is empowered quarterly to reduce the allotments of appropriations from any revenue fund to any department or departments so that the total of the allotments for the fiscal year will not exceed the total estimated revenue at any such time. Under Const.Mo.Art. IV, § 28, "No money shall be withdrawn from the state treasury except by warrant drawn in accordance with an appropriation made by law, nor shall any obligation for the payment of money be incurred unless the comptroller certifies it for payment and certifies that the expenditure is within the purpose of the appropriation and that there is in the appropriation an unencumbered balance sufficient to pay it. * * *." This constitutional provision means that if the projection of some $220,000 shortage in the Division of Family Services personnel appropriation persisted until the end of the fiscal year, the comptroller could not certify as to its payment from the treasury. The obvious purposes of this constitutional provision and § 33.290, supra, are to prevent expenditures by the state from exceeding revenues and appropriations. Concomitantly with those purposes is an obligation upon a department head, such as respondent, to see that expenditures during the fiscal year are not exceeding appropriations, and certainly, under the provisions of § 36.360, she has the discretion to determine at any time within the fiscal year that expenditures are exceeding appropriations, and to take appropriate measures to correct that situation.

At 67 C.J.S. Officers, § 110, p. 463, it is said, "Grounds for reducing working forces by layoff include want of funds on the part of a public body, and the requirement of economy or lack of work may be proper ground for the suspension or layoff of civil service employees." *People v. Stanard*, 6 Ill.App.2d 441, 128 N.E.2d 658, 663 (Ill.App. 1955), quoted from *People ex rel. Behnke v. McLaughlin*, 199 N.E. 810, 812 (1935), " 'It is not within the province of the courts to override the discretionary acts of directors of the different departments of state government in laying off employees, especially where this discretion has been exercised for reasons of economy, * * *.' " *De Remer v. Board of Education of Akron City School District*, 72 Ohio App. 283, 51 N.E.2d 303, 304[3] (1943), in affirming the layoff of a school laborer, said, "Public bodies, which for their operation are dependent upon funds derived from taxes, must necessarily, and in the absence of laws to the contrary are required to curtail their operations so as to keep their expenditures within the available funds; and a sound public policy demands that, in the interest of public economy, they have the right to reduce their working forces by layoffs, in order to prevent deficiencies in the public funds." Note *DeMay v. Gomulka*, 88 Misc.2d 747, 390 N.Y.S.2d 363, 364[1] (N.Y.Sup.1976), although saying that it was well established that an employee holding permanent status may be suspended as a result of abolition of positions for reasons of economy, the city should be required to do more than make a bare statement that because of lack of funds the petitioner's services were terminated. *State ex rel. Sigall v. Aetna Cleaning Contr., Etc.*, 345 N.E.2d 61, 65[4] (Ohio 1976), held, following Ohio precedents, that a civil service employee could be laid off or discharged for reasons of economy, and that Kent State University could contract out a portion of its custodial services to save over $300,000. *Elwell v. North Bergen Tp., Hudson County*, 13 N.J.Super. 330, 80 A.2d 443, 444 (1951), affirmed a layoff of a street and sewer foreman on grounds of economy, saying that the proofs were insufficient to overcome the presumption of good faith.

In *Gannon v. Perk*, 46 Ohio St.2d 301, 348 N.E.2d 342, 349[5] (1976), it was said: "Lack of funds induced when *projected income* falls below *anticipated expenses* is a legitimate basis for laying off civil service employees, including safety personnel, so long as such layoffs are made in conformity with law." [Italics added.] The foregoing cases are illustrative of principles to be applied here. In projecting an appropriation shortage, based upon mathematical computation, respondent was justified in laying off appellant (along with three or four other employees) to stay within the department's budget. No bad faith or improper motive is shown in that action, other than appellant's claims that any projected shortage of funds was due to the department overhiring, and that there were, in fact, surplus funds at the end of the fiscal year, which claims are insufficient as a basis for reversal.

Appellant's cited case of *City of St. Louis v. Smith*, 360 Mo. 406, 228 S.W.2d 780 (banc 1950), is not in point. There a city sales tax was held to be unconstitutional and thus unavailable for revenue receipts, but nonetheless, an appropriation for salaries for 479 discharged employees was still in effect, and the city had ordinances *pending* to raise revenue generally, which could be a quick remedy for the deficits. Here, the appropriation was made but once a session by the General Assembly, and could not be altered in that fiscal year after adjournment.

Because the ground of layoff by reason of lack of funds is ruled adversely against appellant, there is no necessity to review other specified grounds.

The judgment is affirmed.

All concur.