Don G. WALKER and Dennis M. Mobrice, Plaintiffs-Respondents,

v.

PERSONNEL ADVISORY BOARD OF the STATE of Missouri, and Fred McDaniel, and Paul Ahr, Defendants-Appellants.

Nos. 46903, 46945.

Missouri Court of Appeals, Eastern District, Division One.

Feb. 14, 1984.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 29, 1984.

Application to Transfer Denied June 19, 1984.

John D. Ashcroft, Atty. Gen., Carrie Francke, Sara G. Rittman, Ruth A.

Przybeck, Asst. Attys. Gen., Jefferson City, for defendants-appellants.

David L. Mayhugh, Flat River, for plaintiffs-respondents.

SNYDER, Judge.

This is an appeal from a judgment, after a trial de novo, reversing a decision of appellant Personnel Advisory Board (PAB) approving the layoff of respondents Don G. Walker and Dennis M. Mobrice, because of reductions in available funds, from their positions with the Farmington State Hospital. The trial court ordered the reinstatement of Walker and Mobrice, together with an award of back pay, restored vacation time, damages for medical insurance payments made by respondents during the layoff, court costs and attorney's fees. The three defendants appealed. The judgment is reversed.

Appellants have briefed ten points relied on, among them that the trial court exceeded its scope of review when it held a trial de novo; that PAB's failure to hold an evidentiary hearing was proper because there is no due process requirement for a hearing in the case of a layoff due to budgetary restraints; and that the PAB layoff decisions should have been affirmed because they were not arbitrary, capricious, unreasonable or an abuse of discretion. Appellants argue the respondents were laid off in accordance with the applicable statutes and rule and that the trial court erred in substituting its judgment for that of the PAB. This court agrees. Therefore, it will be unnecessary to discuss the other points relied on.

Respondents Don G. Walker and Dennis M. Mobrice were nonprobationary employees of the Farmington State Hospital, which is a facility of the Missouri Department of Mental Health. Walker was classified as an Education Supervisor II, and Mobrice was classified as a Public Information Specialist II. Both Walker and Mobrice were under the supervision of appellant Fred McDaniel, the Superintendent of the Farmington State Hospital.

In early 1981, appellant Dr. Paul Ahr, Director of the Missouri Department of Mental Health, ordered the layoff of 900 employees of the Department of Mental Health in order to comply with an order by the Governor of Missouri to reduce expenditures.

Acting pursuant to Dr. Ahr's orders, McDaniel laid off 139 employees at the Farmington State Hospital. Respondents Walker and Mobrice were among the 139 employees laid off.

Walker and Mobrice each then filed an application for appeal with appellant PAB contending in part that they were victims of the personal animosity of McDaniel. After considering their applications for appeal, "layoff sheets," and the letters of dismissal which McDaniel had sent to respondents, the PAB dismissed Walker's and Mobrice's appeals on the ground that it had no authority to review a layoff caused by a shortage of funds except to determine whether the appointing authority followed the prescribed procedures. The PAB found that the prescribed procedures were followed.

Walker and Mobrice then filed petitions for review of the layoff decision of the PAB naming as defendants the PAB, Fred McDaniel, superintendent of the Farmington State Hospital and Paul Ahr, director of the Missouri Department of Mental Health. Respondents alleged they were subjected to disparate treatment and discriminated against by McDaniel and that their layoffs were due to personal animosity on the part of McDaniel toward them rather than the result of reductions in available funds. The circuit court held a trial de novo, determined that the layoffs were invalid and that Walker and Mobrice had been dismissed for nonmerit reasons. This appeal ensued.

The first task is to determine the mode of judicial review. The starting point for this court's analysis of the method by which judicial review of a layoff is obtained is § 536.100 RSMo.1978:

Any person who has exhausted all administrative remedies provided by law

and who is aggrieved by a final decision in a contested case, whether such decision is affirmative or negative in form, shall be entitled to judicial review thereof, as provided in section 536.100 to 536.-140, unless some other provision for judicial review is provided by statute; provided, however, that nothing in this chapter contained shall prevent any person from attacking any void order of an agency at any time or in any manner that would be proper in the absence of this section. Unreasonable delay on the part of any agency in deciding any contested case shall be grounds for an order of the court either compelling action by the agency or removing the case to the court for decision.

■ Because § 536.100 grants judicial review as provided in §§ 536.100 to 536.140 to persons who have been aggrieved by a final decision in a contested case, the issue becomes whether the layoff of Walker and Mobrice constituted a contested case. " 'Contested case' means a proceeding before an agency in which legal rights, duties or privileges of specific parties are required by law to be determined after a hearing." § 536.010(2) RSMo.1978. Thus, in order to give rise to a contested case, a prior hearing requirement must be imposed by statute, municipal charter, ordinance or constitutional provision. See *Kopper Kettle Restaurants, Inc. v. City of St. Robert*, 439 S.W.2d 1, 3[2] (Mo.App.1969).

No statute, municipal charter or ordinance requires a pre-termination hearing for an employee who is to be laid off. Section 36.360 RSMo.1978, which governs layoffs, simply vests the appointing authority, Fred McDaniel in the present case, with discretion to lay off public employees whenever a fiscal crisis arises. Thus, this was not a contested case under the statute unless due process rights mandate a hearing.

The next issue, then, is whether any constitutional provision, in particular the due process clause of U.S. Const. Amend. XIV, requires a hearing before a state merit system employee may be laid off because of a shortage of funds. "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. When protected interests are implicated the right to some kind of prior hearing is paramount." *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 2705[1], 33 L.Ed.2d 548 (1972). Thus, only if the Fourteenth Amendment's protection of liberty or property encompasses the interest of respondents in not being laid off from their state merit system positions will a prior hearing be required before the projected layoff can take effect.

Property interests "... are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law— rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Board of Regents v. Roth*, 92 S.Ct. at 2709[9]. "The hallmark of property ... is an individual entitlement grounded in state law which cannot be removed except 'for cause.' " *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 102 S.Ct. 1148, 1155[3], 71 L.Ed.2d 265 (1982).

■ In the present case, respondents may be deprived of their state employment not only for cause under §§ 36.380 and 36.390, but also upon a layoff which is discretionary with the appointing authority, Fred McDaniel, "... whenever he deems it necessary by reason of shortage of work or funds ..." § 36.360. Thus, respondents' do not possess an entitlement which cannot be removed except for cause. Although respondents may have a property interest which requires a pre-termination hearing before a dismissal, see *Kennedy v. Robb*, 547 F.2d 408 (8th Cir.1976), cert. den. 430 U.S. 913, 97 S.Ct. 1325, 51 L.Ed.2d 592 (1977), that property interest does not extend to a layoff.

■ Even if respondents' interest in remaining free from a layoff arises to a due process property interest, the deprivation of that interest via layoff does not necessarily have to be preceded by a hearing.

Where only property rights are involved, mere postponement of the judicial enquiry is not a denial of due process, if the opportunity given for the ultimate judicial determination of the liability is adequate. Springer v. United States, 102 U.S. 593, 26 L.Ed. 253; Scottish Union & National Insurance Co. v. Bowland, 196 U.S. 611, 631, 25 S.Ct. 345, 49 L.Ed. 619. Delay in the judicial determination of property rights is not uncommon where it is essential that governmental needs be immediately satisfied. *Phillips v. Commissioner of Internal Revenue*, 283 U.S. 589, 51 S.Ct. 608, 611, 75 L.Ed. 1289 (1931); see also *Ewing v. Mytinger & Casselberry, Inc.*, 339 U.S. 594, 70 S.Ct. 870, 873[2], 94 L.Ed. 1088 (1950).

Here, delay in the implementation of a layoff could seriously undermine the state's ability to manage its fiscal resources. For instance, if all 900 employees who were laid off had to be granted a pre-termination hearing, their employment would continue indefinitely and the very danger which a layoff seeks to avert, the depletion of the state treasury, could become a reality.

A pre-termination hearing is also required where there has been a denial of an interest in liberty protected by the Fourteenth Amendment. The Supreme Court in Roth alludes to circumstances which might compel a due process hearing for a state employee where, for example, the state charges an employee with dishonesty or immorality in a way which "might seriously damage his standing and associations in his community," or where the state in declining to reemploy an individual otherwise infringes on his liberty by "impos[ing] on him a stigma or other disability that foreclose[s] his freedom to take advantage of other employment opportunities." *Roth*, supra at 408 U.S. at 573, 92 S.Ct. at 2707. *Wilderman v. Nelson*, 467 F.2d 1173, 1175[3] (8th Cir.1972).

No stigma is involved in the present layoffs. Although respondents charge that the layoffs were motivated by McDaniel's

personal animosity, "no false or defamatory public statements made reference the layoff of respondent." *Amaan v. City of Eureka*, 615 S.W.2d 414, 415 (Mo. banc 1981) cert. den. 454 U.S. 1084, 102 S.Ct. 642, 70 L.Ed.2d 619. The dismissal letters make no reference to any conduct or attitude of respondents which might have led to the layoff.

The layoffs of Walker and Mobrice do not carry any stigma which may impede future employment opportunities. It is unlikely that a prospective employer would refuse to employ either Walker or Mobrice because they had been the victims of a state budgetary crisis. No liberty interest has been implicated.

■ No statute, municipal charter, ordinance or constitutional provision requires a hearing before the layoff of nonprobationary state employees. Nor does any statute label post-layoff proceedings a contested case. Cf. § 36.390.9 RSMo.1978 (post-dismissal proceedings are designated contested cases). Thus, a layoff is not a contested case. See *State ex rel. Knowles v. Reser*, 633 S.W.2d 450 (Mo.App.1982) (layoff reviewable by mandamus). Therefore, under § 536.100, judicial review is not had pursuant to §§ 536.100 to 536.140.

■ No other provision for judicial review is made for the layoff of state employees. Moreover, a layoff is not subject to administrative review; the administrative review provisions of § 36.390 RSMo.1978 do not apply to layoffs under § 36.360. Accord, *Fleming v. Pima County*, 125 Ariz. 523, 611 P.2d 110 (Ariz.App.1980); *Schioniger v. County of Cook*, 116 Ill. App.3d 895, 72 Ill.Dec. 530, 532–533, 452 N.E.2d 783, 785–786 (1983).

That the case under review is not a contested case does not mean that appellants' actions are unreviewable. The state should be required to do more than make a bare allegation that the layoffs resulted from a budgetary crisis. See *DeMay v. Gomulka*, 88 Misc.2d 747, 390 N.Y.S.2d 363, 364 (Sup.

1976). Instead, judicial review is governed by § 536.150 RSMo.1978.[1]

Although respondents did not proceed by any of the methods allowed by § 536.150 RSMo.1978 unless their petition for review was an "other appropriate action," this court is reviewing the case as an action pursuant to § 536.150.

■ The sole question is whether the layoffs of respondents Walker and Mobrice were accomplished under prescribed procedures and were lawful. If appellants Dr. Ahr and McDaniel complied with § 36.360 which vests in Fred McDaniel, as appointing authority, the discretion to layoff non-probationary, regular state employees for fiscal reasons, and also complied with the state regulations pertaining to layoffs, then this court is powerless to reverse their decision because "... the court shall not substitute its discretion for discretion legally vested in such administrative officer ..." § 536.150.1. If the layoffs were valid, no other grounds specified by respondents will be considered. See *State ex rel. Knowles v. Reser*, 633 S.W.2d at 453.

Respondents nowhere allege that a fiscal crisis did not in fact exist. Thus, in order to prevail, respondents must show that the layoffs were not accomplished according to state law.

The "layoff" sheet for Education Supervisor II, the class to which respondent Don Walker was assigned, listed Walker as a regular employee along with seven others. The first question is whether there were other non-regular employees within Walker's job classification. "No regular employee shall be laid off while a person is employed on a provisional, temporary or probationary basis in the same class in that division." 1 C.S.R. 20–3.070(1)(A). All eight employees in Walker's job classification were regular employees; therefore, 1 C.S.R. 20–3.070(1)(A) has no application to the instant case.

The next issue is whether the layoff procedures for the layoff of regular employees was followed:

3. Layoff of regular employees shall be made in inverse order of service credit and by class in the division or area of service involved. Re-employment and reinstatement probationary employees shall be considered as regular employees for purposes of implementing a layoff. If it is found that two (2) or more persons in the class and the division or area in which layoff is to be made have equal service credit, the order of layoff in all cases shall be in inverse order of seniority as defined by these rules. Remaining ties shall be broken on the basis of the last regular numerical service report score. If the service report score does not establish definite differentials for all regular employees in the class involved,

1. 1. When any administrative officer or body existing under the constitution or by statute or by municipal charter or ordinance shall have rendered a decision which is not subject to administrative review, determining the legal rights, duties or privileges of any person, including the denial or revocation of a license, and there is no other provision for judicial inquiry into or review of such decision, such decision may be reviewed by suit for injunction, certiorari, mandamus, prohibition or other appropriate action, and in any such review proceeding the court may determine the facts relevant to the question whether such person at the time of such decision was subject to such legal duty, or had such right, or was entitled to such privilege, and may hear such evidence on such question as may be properly adduced, and the court may determine whether such decision, in view of the facts as they appear to the court, is unconstitutional, unlawful, unreasonable, arbitrary, or ca-

pricious or involves an abuse of discretion; and the court shall render judgment accordingly, and may order the administrative officer or body to take such further action as it may be proper to require; but the court shall not substitute its discretion for discretion legally vested in such administrative officer or body, and in cases where the granting or withholding of a privilege is committed by law to the sole discretion of such administrative officer or body, such discretion lawfully exercised shall not be disturbed.

2. Nothing in this section shall apply to contested cases reviewable pursuant to sections 536.100 to 536.140.

3. Nothing in this section shall be construed to impair any power to take summary action lawfully vested in any such administrative officer or body, or to limit the jurisdiction of any court or the scope of any remedy available in the absence of this section.

the further order of layoff shall be determined by the appointing authority with the approval of the director, in such manner as to conserve for the state the services of the most valuable employee. 1 C.S.R. 30–3.070(1)(B)(3). According to the layoff sheet, four of the eight employees were targeted for a layoff. Walker's total service credit was given as "8" which was sixth highest score. Thus, the layoff sheet indicates that Walker was the third person to be laid off.

In reviewing the layoff sheet the trial court found three mistakes. Walker's service credit was erroneously stated. One person was erroneously omitted from the layoff sheet and another erroneously included. Upon analysis, considering Walker's correct service credit score and the scores of the employee omitted and the employee included in error, Walker's layoff would have been unaffected regardless of whether the layoff sheet had been corrected in accordance with the trial court's findings.

The trial court also found that a person with a lower total service credit rating than Walker was laid off after Walker and rehired while Walker remained on layoff. The finding:

> Christine Salisbury classed as Education Specialist II at time of layoff and who had a lower total service credit on the "Layoff Sheet" than Walker was not laid off until over a month after Walker was laid off. Salisbury was then rehired in the same classification (Education Supervisor II) that Walker had while Walker remained on layoff. Salisbury's job was never offered to Walker by Ahr's agency, the Department of Mental Health. Walker's name was on the reinstatement register which was to list the names of employees in the order of first name of the Register with the highest number of points. It was mandated that the reinstatement register must be used to fill positions in classifications being refilled before any other type register can be used.

Assuming that the trial court's finding of fact is supported by the evidence, the failure of Fred McDaniel to lay off Ms. Salisbury before Walker was laid off and the rehiring of Ms. Salisbury while Walker remained on layoff was not prejudicial to Walker. Violet Miller, a regular employee with a total service credit score higher than Walker's, was also a victim of the layoff. If Ms. Salisbury should have been laid off sooner than, or rehired before, a person with a higher service credit rating, then Ms. Miller, not Walker, was prejudiced.

None of the errors found by the trial court in the layoff of Walker in any way affected the order of his layoff. Therefore, the trial court erred in concluding that the layoff of Walker was not in conformity with 1 C.S.R. 20–3.070(1).

The layoff sheet for Mobrice shows that of the six persons who were to be laid off in the class of Public Information Specialist II, four had total service credit ratings higher than Mobrice's score while only one had a rating below that of Mobrice. The trial court found that Toby Sutton, the employee whose service credit rating was lower than Mobrice's, was offered a transfer in lieu of layoff whereas this offer was not made to Mobrice.

The question is whether, assuming that the trial court's finding is correct, Mobrice was prejudiced by the lack of the offer to transfer. No finding was made that the opportunity to transfer was given to and turned down by the four persons with higher service credit ratings than Mobrice. Mobrice was not entitled to transfer unless the regular employees with higher service credit ratings than Mobrice had turned down the opportunity to transfer. The trial court erred in concluding that the layoff of Mobrice did not comply with 1 C.S.R. 20–3.070(1).

Respondents rely heavily on *Drey v. State Tax Commission*, 323 S.W.2d 719 (Mo.1959). The plaintiff in *Drey* was contesting the assessed valuation of his real property as determined by the county assessor. The administrative review process required the plaintiff to appeal first to the

county board of equalization, then to the state tax commission, and then to the circuit court of the county where the real property was located. When the plaintiff appealed to the state tax commission, the county prosecuting attorney, who apparently represented the county assessor, moved to dismiss the appeal because the plaintiff had failed to appeal first to the county board of equalization. The commission heard evidence on the prosecuting attorney's motion and dismissed the appeal. On appeal to the circuit court, the circuit court reviewed the commission's decision only to determine whether it was supported by competent and substantial evidence on the whole record and affirmed the dismissal.

The Missouri Supreme Court held that because the dismissal of the appeal by the commission involved no administrative discretion, the circuit court should have weighed the evidence for itself and heard and considered additional evidence. Because the circuit court had not done so, the supreme court itself undertook the responsibility of weighing the evidence and determined that an appeal had in fact been taken to the county board of equalization. The supreme court reversed the circuit court and ordered it to remand the case to the commission for further proceedings.

*Drey* may have limited applicability to the present case, although it was reviewed as a "contested case" under the administrative review statutes. To the extent that respondents contend the PAB erroneously considered the layoff sheets, the circuit court was authorized to weigh the evidence for itself and hear and consider additional evidence, because whether an administrative agency need give notice that it is "hearing" evidence does not involve administrative discretion. If the circuit court believed that an erroneous procedure was followed, then the proper course would have been to remand the case to the PAB, similar to the action taken in *Drey*. By no stretch of the imagination, however, does *Drey* authorize the full-scale de novo review which the circuit court here took upon itself.

This court holds that the layoffs of respondents Walker and Mobrice were valid and in substantial compliance with § 36.360 and 1 C.S.R. 20–3.070(1). "Because the ground of layoff by reason of lack of funds is ruled adversely against ... [respondents], there is no necessity to review other specified grounds." *State ex rel. Knowles v. Reser*, 633 S.W.2d at 453.

The judgment is reversed.

KELLY, P.J., and STEWART, J., concur.